## GILMORE & *al. vs.* BLACK.

B. as the agent of others, agrees in writing to convey to G. & D. or to whomever they should appoint, certain lands, on payment of a stipulated sum. Afterward, D. mortgages to B. all his " right, title and interest *in the land,*" to secure a debt due from him alone to B.    After this, the mortgage being upon record, and G. knowing of its existence, takes an assignment from D. of all his interest *in the contract*— pays the stipulated sum to B. — and demands a deed to *himself alone :* — this, B. declines giving, but offers him one running to G. *and D. both.*   Whereupon it was held : —

That, the terms used in the mortgage were sufficiently descriptive of D's interest in the contract, and were effectual to pass that interest.

That, the contract did not create technically a *partnership* between G. and B. so as thereby to preclude one from bringing a stranger into the concern without the consent of the other.

That, B., by receiving the *whole purchase money* of G., did not thereby *waive* his claim under the mortgage.

THIS was an action of *assumpsit* on the written contract of the defendant as agent for the trustees of the heirs of *William Bingham,* to convey to *Gilmore* and *Deane,* the plaintiffs, or to whom

Gilmore & al. *v.* Black.

they should appoint, certain real estate, on their payment of four notes of hand, amounting to $1145. The contract was dated *May* 1, 1828.

On trial of the action at the *July* term, 1833, before *Weston J.* it appeared, that on the 3d of *June*, 1830, *Joseph A. Deane,* one of the plaintiffs, mortgaged to the defendant, all his right, title and interest to the *land* in question, to secure the payment of about $2000, due from *him alone to the defendant* — that, the mortgage deed was recorded *June* 22, 1830 ; and that, the plaintiff, *Gilmore,* had actual knowledge of the mortgage within three months after its date.

On the 28th of *February*, 1831, *Deane* assigned all his interest in the contract to *Gilmore*, his co-tenant, and the latter paid and took up the notes given for the purchase money. On the 2d of *May*, 1832, *Gilmore* produced the contract and assignment and requested *Black* to give him a deed as sole grantor of the lands ; but *Black* declined, at the same time offering him one running to *both* the plaintiffs, which *Gilmore* refused to receive.

Upon this evidence, by consent of parties, a nonsuit was entered, subject to the opinion of the Court upon the question, whether by law the action was maintainable.

*Abbot* and *Hathaway*, for the plaintiffs, to show that the action was rightly brought against the *agent,* cited *Stackpole* v. *Arnold,* 11 *Mass.* 27 ; *Mayhew* v. *Prince,* 11 *Mass.* 54 ; *Arfridson* v. *Ladd,* 12 *Mass.* 173 ; *Stinchfield* v. *Little,* 1 *Greenl.* 231.

Nothing passed to the defendant by *Deane's* deed of mortgage. Whatever right he had, was in the *contract* and not in the *land*— and that, was transferrable *jointly* and not *severally.* It was a mere right to damages for not conveying, and that was a *joint* right.

But if *Deane* could alone convey, he could do it only subject to the obligation to pay half of the purchase money. And the defendant's receiving the whole purchase money of *Gilmore* was a virtual abandonment of all claim under the mortgage.

The rights of the parties are, as if they had received a conveyance from *Black*, and had mortgaged back, and one of the plaintiffs had paid the whole debt ; in which case, the one paying would succeed to the creditor's lien. *Sargent* v. *McFarlane,* 8 *Pick.* 502.

Gilmore & al. *v.* Black.

Again, they insisted that the plaintiffs were partners in the transaction, and that one could not sell out and force a partner upon the other, against his consent. 1 *Montague on Part.* 9 ; 14 *Johns.* 318 ; 17 *Johns.* 535. It being a partnership, it was a fraud on *Gilmore* for *Black* to receive a mortgage of *Deane,* for his private debt, without *Gilmore's* knowledge or consent. 2 *Dane's Abr. ch.* 52, *art.* 2 ; *Bullard* v. *Dame,* 7 *Pick.* 234.

*J. G. Deane,* for the defendant.

WESTON J. delivered the opinion of the Court.

In virtue of the contract, for the alleged breach of which this action is brought, *Gilmore* and *Deane* acquired a right to the land therein described, upon performance of the conditions, which might be specially enforced by a bill in equity. An interest of this sort might be very valuable. It is by law subject to attachment and execution. *Stat. of* 1829, *ch.* 431. And this is necessary to give effect to the just claims of creditors. The statute is broad enough to embrace it, though not a several interest. The purchaser thereby becomes substituted for the original contractee, and has an interest in common with the other person or persons, for whose benefit the contract was made. They are not injured, or their rights impaired by such substitution. Upon any other construction, a debtor has only to unite with others in procuring contracts of this description, to any extent, and whatever may be their value, set his creditors at defiance. It is said the interest is divisible. It may not be in the power of the contractees, while the interest remains in contract, to make such partition among themselves, as would make it the duty of the other contracting party to execute more than one deed. And yet upon payment or tender of the additional expense, there seems no good reason why he should refuse to do so, to carry into effect the lawful arrangements of the other parties.

It is of the essence of property, that it should be modified to suit the convenience of those interested in it, provided thereby the rules and principles of law are not violated. It was a deed, not deeds, the defendant stipulated to procure ; but it was to be given to *Gilmore* and *Deane,* their heirs and assigns, or to whomsoever else they might in writing appoint. *Reddendo singula singulis,*

what is there to forbid each from assigning his interest? If but one deed was to be given, the assignees could receive it, as well as the original contractees. That other persons might be substituted, the contract clearly contemplates. On the third day of *June*, following the date of the contract, *Deane* conveyed his interest to *Black*, reserving a right to redeem the same, upon payment of about two thousand dollars. The mode adopted was a mortgage of all *Deane's* right, title, and interest in the land in question. They are terms sufficiently expressive to assign his right in the contract. *Gilmore's* interest was unaffected. Whether associated with *Deane* or *Black*, it remained the same. The mortgage deed was recorded; and the case finds that *Gilmore* had actual notice of it. Justice requires that *Black* should thereafterwards be regarded, to the extent of his mortgage, as the assignee or appointee of *Deane*; and no doubt his right as such would be sustained in equity, if not at law. But, however that might be, on one point we are entirely satisfied, that *Deane* could not lawfully make any other appointment, to the prejudice of the mortgage; nor could any other person with notice receive such appointment, without being guilty of a fraud upon the mortgagee. *Gilmore* claims now to defeat the mortgage, of which he had previous notice, in virtue of an appointment subsequently made by *Deane* to himself. This cannot be permitted, without a violation of good faith. By his assignment to *Black*, *Deane* has disabled himself from making any other appointment; and of this *Gilmore* was fully apprized. Under these circumstances, we cannot regard him as the appointee of *Deane*, unless he first extinguishes *Black's* mortgage. *Gilmore* then had no right to insist upon a deed to himself alone, and the deed which he refused, running to himself and *Deane*, ought to have been accepted.

It has been contended that the contract in question is a partnership concern, and the case of *Bullard* v. *Dame*, 7 *Pick.* 239, and certain other cases from *Johnson*, have been cited to show that a company or copartnership cannot be compelled to receive a stranger into their league. And this is no doubt true with respect to partnerships, properly so called. But they do not arise merely from the joint purchase even of merchandise. If two persons unite, for instance, in the purchase of one hundred chests

of tea, and give their joint note for them, they do not thereby become partners. Each party is at liberty to sell his own interest, and he has no authority to sell that of his companion. To constitute a partnership, as between the parties, there must be an agreement express, or implied from the nature of the business, to participate in profit and loss in buying and selling, or in carrying on some joint labor or enterprize. This relation is not to be implied from the purchase, by two or more persons, of real estate; the law declaring such purchase to be an estate in common, unless it is otherwise clearly expressed. And an agreement to purchase such estate, cannot have the effect to create a partnership.

It is insisted that *Black,* having received from *Gilmore* the whole purchase money, and contributing no part of it, has waived his mortgage. It was paid voluntarily. What he received, was in his capacity as agent, in the discharge of his duty to his principals. If he claims to hold *Deane's* part, in virtue of his mortgage, and *Deane* has paid less than his part, *Gilmore* may have a just claim upon him for contribution. That may be enforced in another action; but the case before us presents no breach of the contract declared on.

*Nonsuit confirmed.*