Moncure, P.,
delivered the opinion of the court.
This is a writ of error and supersedeas to a judgment of the circuit court of Scott county, rendered on the 24th day of August, 1875, in an action of unlawful detainer, which was pending in said court in the name of Nancy McKinney, plaintiff, against Franklin Bartley, defendant. The plaintiff claimed a tract of land described in ber complaint by metes and bounds* and estimated to contain fifty-two acres, lying in said county. Both parties claimed title under James McKinney, who lived and died in that county, and whose will, bearing date on the 7th day of April, 1859, was duly recorded in the county court of said county in the same year. The second clause of his will was in these words: “2. I will and bequeath unto my beloved wife, Nancy McKinney, instead of. her dower, all my real estate during her natural life, except certain portions of the same hereafter mentioned in this will and bequeathed to my children,” &c'. The fourth clause is in these words: “4. I will and bequeath to my beloved son, David McKinney, all that part of my real estate which he now occupies, except that part hereby willed to Louisa Young (by the third clause of the will) for his use and benefit during his. natural life, and at his death to his children,” &e. The plaintiff claimed the land in controversy as being a part of the land devised to her for her life by her husband, the said testator James McKinney, as aforesaid. The defendant claimed it as being part of the land devised to David McKinney for his life by his father, the said testator, as aforesaid; the defendant claiming to be tenant of the land in controversy for a year, or from year to year of *753 H. S. Kane, the purchaser of the interest of said David McKinney in the land devised to him for life as aforesaid, at a sale made of said interest by the assignee in bankruptcy of the said David McKinney; the said Kane claiming that the land in controversy is a part of the land which was devised to the said David McKinney and purchased by said Kane as aforesaid. Whether it is a part of the land which was devised to said Nancy McKinney, or a part of the land which was devised to said David McKinney as aforesaid, is the only question on the merits, which is involved in this ease. And whether it be one or the other, depends upon the question whether or not it be part of the testator’s land which was occupied by said David McKinney at the time of his father’s death or date of his will. If it is, then it is part of the land which was devised to the said David McKinney; if it is not, then it is part of the land which was devised to the said Nancy McKinney, as aforesaid.
After the action had been for some years pending in the court below, verdict and judgment were at length rendered therein for the plaintiff, the said Nancy McKinney. On the petition of the defendant, the said Franklin Bartley, by the name of Wm. F. Bartley, a writ of error and supersedeas was awarded to him by a judge of this court; which is the case we now have to dispose of.
Several errors are assigned in this case, which we will proceed to consider in their order of assignment. The first is:
“ 1st. Because no plea has ever been filed by the defendant or his counsel in said case, and no issue joined between the parties; and consequently the verdict and judgment are erroneous. Rowans v. Givens, 10 Gratt. 250," &c.
*754 It does not appear from the record that any plea was actually filed or put in by the defendant in the though an “issue” is frequently mentioned .in an(j a july wag twice sworn to try “the isgUe,” or “the issue joined” in the case, and verdictand judgment were rendered thereon. At the very court to which the summons was returned executed, to wit, June, 1872, the cause was continued on the motion of the plaintiff) and an order of survey was made on the motion of the defendant. At the next term of the court, to wit, July, 1872, the cause was continued on the motion of the defendant, and another order of survey was made on his motion. In August, 1872, the cause was continued generally, and in September, 1872, it was continued on the motion of the plaintiff. In December, 1872, the parties mutually agreed that nine jurors should try “the issue in the cause,” and accordingly nine jurors were thereupon sworn to try “the issue joined.” But after being for several days engaged in the trial, were unable to agree, and a juror was withdrawn, and the rest of the jury, from rendering their verdict were discharged. And thereupon, by agreement of the parties by their attorneys, announced in court, the cause (which down to that time had been pending in the county court) was sent to the circuit court of said county, to be there proceeded in to final determination. In the circuit court the cause was continued, once generally, bnce on the motion of the plaintiff, and five times on the motion of the defendant, until August, 1875, when a jury was sworn to try “the issue joined.” And after being several days engaged in the trial, they at length found a verdict in these words: “We, the jury, find for the plaintiff the land mentioned in the within summons as therein described.” And judgment was thereupon rendered, *755 •“ that the plaintiff recover against the defendant the possession of the premises aforesaid, and her costs by her in this behalf expended; whereupon, on motion, a writ of possession was awarded to her.” And the defendant moved the court to set aside the said verdict and judgment, and the court took time to consider of said motion. Afterwards, to-wit, on the 24th day of August, 1875, the court having maturely considered the said motion, and the plaintiff by counsel in open court releasing to the defendant the parcel of about one half acre of the land in dispute described by the witness, James M. Young, in his testimony, the boundaries of which half acre are set out in the record; thereupon the court set aside the said judgment, but overruled the said motion to set aside the verdict, and rendered judgment that the plaintiff recover possession of all the premises in the summons described, except the said half acre, and that she recover her costs as aforesaid.
Thus it appears that if there was in fact no issue joined, and no plea in the ease, as there doubtless was not, the case was proceeded in and tried as if there had been such plea and issue, and was so proceeded in with .the consent and by the co-operation of the defendant himself, who, though he alone had the right to put in a plea, did not choose, but omitted to do so, and elected to proceed to trial without. He cannot, therefore, take advantage of his own wrong and make the objection, for the first time, in the appellate court. Had he made it in the court below, while the cause was pending there, it might, and no doubt would, at once have been removed. In fact he had a right to put in a plea, and could have done so of his own accord, and without the leave of the court, if he had desired to do so: but he did not.
*756 In fact the defendant has sustained no injury by , . what has been done m the court below in that respect the case was tried precisely in the same manner aQ(j same effect as if the plea of not guilty bad been put in, and issue thereon had been joined in, the case.
Formerly, we know, there was no provision for any plea in such a case, but it was a summary proceeding-commenced by the warrant of a justice of the peace, and triable before three justices, and without pleadings. , See 1 Rob. Pr., old edition, pp. 496-498, and authorities cited.
But now it is a proceeding of more formality. See' Code of 1873, eh. 130, embodying the act of 1870, ’71, Sess. Acts p. 173, ch. 130. Still there is but one plea provided for, which is the plea of “not guilty,” which the defendant may put in or not at his election, and if he elect not to put it in, and chooses to go to trial, as. the defendant did in this case, without putting it in, the effect is precisely the same under the law as if he had put it in. The law provides that “ if the defendant appear and plead, his plea shall be “ not guilty.” Upon this issue, or upon the return of the first or any subsequent summons “ executed,” the court or justice as the case may be, shall try whether he unlawfully withholds the premises in controversy. When the summons is-returnable to a court, a jury may be impaneled to try the case upon the application of either party, at any time before the trial. Id. § 2. The law further provides, that “if it appear that the plaintiff was forcibly or unlawfully turned out of possession, or that it was unlawfully detained from him, unless it also appear that the defendant has held or detained the possession for three years before the date of the summons, the verdict or judgment shall be for the plaintiff for the *757 ■said premises, or such part thereof as may be found to have been so held or detained. When part only of the premises is found for the plaintiff, the verdict judgment shall describe the part so found. In such cases the verdict or judgment shall be for the plaintiff. If the verdict be for the defendant as to the whole, judgment shall be for him.” Id. § 3.
The case is very different from that of Rowans v. Givens, supra, relied on in the petition,, and the cases cited in that case. If this were an ordinary case, it might be material to enquire whether, according to what is said by this court in Southside R. R. Co. v. Daniel, 20 Gratt. 344, cited in the argument, there would be any error of which the party could avail himself on the ground taken in the first assignment of error. What is said in the opinion of Judge Staples, which was concurred in by all the judges who sat in that case, in regard to “the spirit of the modern cases, and the disposition manifested by the courts to disregard mere technical objections, unless there be omitted something so essential to the action or defence that judgment according to law and the very right of the case cannot be given,” Id., pp. 360 and 361, strongly applies to this case. But, without considering that question, we are of opinion that there is no error in the judgment on the ground taken in the first assignment of error.
The second assignment of error is:
2nd. “Because the verdict and first judgment rendered in the case were both rendered for one-half acre of land too much, as conceded by the plaintiff’s counsel, upon which ground the motion of the defendant’s counsel to set aside the verdict of the jury ought to have been sustained; and the court erred in accepting *758 ora* act 01^ counse^ i'or plaintiff as a legal and proper release to defendant of the half acre of land re~ by plaintiff, and thereupon set aside the judgmenj. -grst -rendered, and rendered a second judgment minus the half acre of land, and overruled the motion of defendant’s counsel to set aside the verdict rendered for the whole parcel of land sued for.”
If the verdict and first judgment were for a half' acre too much, that defect could of-course be cured by a release of the half acre and taking a judgment, as was done in this casé, for the balance of the land for-which the verdict was rendered. The only question is, whether there has been an effectual release of the half acre. There can be no doubt upon that subject. For the plaintiff’s counsel had a right to correct the verdict in that respect by a release of the half acre improperly recovered. There is no judgment against the defendant except for the balance of the land after deducting the half acre. The plaintiff has never objected to this act of her counsel, but, on the contrary, has affirmed it by claiming the benefit of the judgment which the defendant is now seeking to avoid.. There is no uncertainty as to- the half acre released, the boundaries thereof being set out'in the judgment. If the plaintiff is satisfied. with the release, the defendant is not prejudiced thereby, and surely cannot complain of it. “We are of opinion that there is no-error in the judgment in that respect.
The third assignment of error is:
“3d-. Because the documentary evidence alone adduced by defendant in the cause, being the deed to his landlord from the assignee and - his written leases, proved clearly and conclusively that the defendant and those under whom he claimed had held and detained. *759 the possession of the land in controversy more than three years before the date of the summons issued in the cause.”
The fact is certainly not so. The deed from the assignee in bankruptcy of David McKinney merely conveys to Henry 8. Kane the bankrupt’s interest in the tract of land devised to him by his father, but does not set out the boundaries of that land—much less, does not affirm that the land in controversy is part of the land which was so devised. The question, whether the said land in controversy be parcel or not of the said land so devised, remains wholly unaffected by that deed. As to the lease which was made by said Kane to said David McKinney, for two years, of the land which was bought by the former at the sale made by the assignee in bankruptcy of the latter, as aforesaid, that lease is of the land devised to said David by his father, and no more describes or conveys the land in controversy than does the deed from the assignee aforesaid. And as to the leases subsequently made by Kane to Godsey dated 10th February 1871, and to the defendant Bartley, the 16th of April 1872, for a year each, if they were of the land in controversy, as they no doubt were, still neither of them was executed or bears date more than three years before the date of the summons issued in this cause, which was the 18th day of May 1872. Therefore we think the circuit court did not err on the ground stated in the third assignment of error.
The fourth assignment of error is:
“4th. The court erred in excluding from the jury that portion of the deposition and evidence of the witness, Robert S. Harris, that proved that the plaintiff as widow of James McKinney, dec’d, has been in possession of, and enjoyed the benefits of, one full half of the *760 cleared lands of her late husband, James McKinney, dee’d, from the time of his death to the present time.” This is the subject of the first bill of exceptions. >phe court |s 0f opinion that there is no error in the jU(jgment 0f tbe circuit court on that ground. The evidence excluded was wholly irrelevant to the issue, or matter in controversy and was inadmissible. There was therefore no error in excluding it.
The fifth assignment of error is:
“ 5th. The court erred in refusing to give the instructions asked for by defendant’s counsel, numbered 1, 2, and 3, and to be found on pages 79 and 80 of the record, and in giving no instruction in lieu thereof.” This is the subject of the third bill of exceptions.
That bill of exception states that on the trial of the cause, after the parties had introduced all the evidence, as the same is set out in the defendant’s bill of exceptions No. 4, the defendant by his counsel moved the court to give to the jury the instructions numbered 1, 2, and 3, in the words and figures following, to wit:
“No. 1. The court further instructs the jury, that if Nancy McKinney allowed her son David McKinney to appear as the owner of the land in controversy, and as having full power to dispose of the same, and innocent third parties were thus'led into dealing with him as the owner thereof, that she will be estopped to deny the right of said David McKinney to dispose of the same.”
There was no evidence before the jury tending to show that she allowed him to appear as the owner of the land in controversy and as having full power to dispose of the same, and that innocent third parties were thus led into dealing with him as the owner thereof. And if there was, certainly there was no evidence before them tending to show that there was any *761 intent on her part in any thing done or permitted by her, that innocent third parties should be led into dealing with him as the owner of the said land. Being his mother she may have permitted him, as her husband probably did before her, to use the land in controversy, or a part thereof, or the house thereon; but she did not, so far as the record shows or tends to show, give him any title to, or interest in, the land in controversy or any part thereof, which he could sell or otherwise dispose of, or which his assignee in bankruptcy could so sell or dispose of; even if such assignee had ever attempted or intended so to do, as he never did, so far as the record shows or tends to show.
“No. 2. The court also tells the jury that if they believe from the evidence that Nancy McKinney, at the time the land was being run out by her son, David McKinney, for the purpose of delivering possession of the lands in controversy to H. S. Kane, or his tenants, had notice of the purpose for which it was being surveyed, and stood silently by, allowing the same to be surveyed for the purpose of delivering the same, and that the lines were run so as to include the land in controversy with her knowledge, and delivered to said Kane and his agent or tenant; then the said Nancy McKinney is estopped to deny David McKinney’s right to dispose of the said land, and the jury should find for the defendant.”
' There is no evidence in the record tending to show any such case as is supposed in the instruction, and the same was calculated to mislead the jury. There was no survey made before Kane became the purchaser at the sale made by the assignee of the bankrupt, David McKinney; and nothing which may have been done or said at the survey afterwards made, ■could possibly have had any influence on Kane in *762 making tke Purckase- The plaintiff', Mrs. McKinney,. could therefore have had no motive in surrendering any of her rights to the said purchaser, or in pretend-^at any part of her share of her husband’s land belonged to her bankrupt son, or to the purchaser at the sale made by his assignees. She was an old lady,, over seventy-five years of age, had but a life-estate in the land, and probably did not understand the purpose for which the survey was being made. She had no motive to commit the fraud which is imputed toller; and the strongest and clearest evidence ought to be required to convict her of it. The testimony is-perfectly consistent with her innocence; and the court was right in refusing to give an instruction founded on the supposition of her guilt upon the faith of such-testimony. There is, therefore, no error in the judgment on account of the refusal of the court to give-instruction number two.
“No 3. The court instructs the jury that a partition, of land, to be binding, must be consummated by the-execution of a deed between the parties to the partition, or by some memorandum in writing; and unless there be such evidence of a partition before them, they cannot believe there is any partition of the lands devised to the widow of James McKinney, deceased, by his last will, between the heirs of the said James McKinney.”
There was no ground whatever for this instruction,, which was not at all appropriate to the case, and the circuit court therefore did not err in refusing to give it.. The sixth assignment of error is:
“ 6th. The court erred in overruling the motion of the defendant’s counsel to exclude from the jury the deposition of David McKinney and W. S. R. McKinney, taken and offered in evidence by plaintiff’s coun *763 sel, and permitted to be read to the jury.” (See the depositions and exceptions taken to them by defendant’s counsel, and endorsed on them.) This assignment of error is founded on a bill of exceptions taken by the defendant to the action of the court in overruling his motion to exclude said evidence from the jury.
The exception endorsed on the deposition of David McKinney is in these words: “ This deposition is excepted to, because the witness sold tQ and rented from H. S. Kane, the landlord of the defendant, William F. Bartley, in so far as it tends to disparage the title he has acknowledged in solemn form, by sale and by writing, by an agreement under seal November 13th, 1873, and because the witness merely gave - his understanding, and not the facts.” That endorsed on the deposition of W. S. R. McKinney is in these words: “ That part of this deposition is excepted to, in which he testifies to what his father says, and to what he understands, without giving the source from which his understanding is derived; and said deposition is excepted to, because it is taken to be read in a case in which Nancy McKinney is plaintiff, and Franklin Bartley, is defendant, and the defendant in this suit is William F. Bartley, a wholly different name, and so far as it tends to disparage the title of his vendee, the defendant’s landlord and also the former landlord of witness, November 13th, 1873.”
We think the exceptions are not well founded. Those endorsed on the deposition of David McKinney are two-fold: 1st. Because the testimony tends to disparage the title which the witness had acknowledged in solemn form by an agreement under seal. That would be good ground for not permitting him to deny the title of his landlord in an action for rent or posses *764 sion, but certainly not good ground for bis incompeteney to deny that fact in a controversy between other and in which he has no interest. 2dly. Becauge witness merely gives his understanding, and ÜOt the facts. It appears that he intended to state the facts according to the best of his knowledge or understanding and belief, and it will be so presumed in the absence of evidence to the contrary. The witness might have been cross-examined as to the nature of his understanding on the subject, but was not. Those endorsed on the deposition of W. S. R. McKinney are three-fold, two of which are similar to those endorsed on that of D. McKinney, and may be answered in the same way. The 8d is, because the deposition was taken to be read in a case in which Franklin Bartley is defendant, whereas, in this case, William F. Bartley is defendant. This is certainly not a good ground of exception. They are the same name in effect. William F. Bartley being no doubt William Franklin Bartley, and commonly called by his middle name, “Franklin.” The action was commenced against Franklin Bartley, who did not plead misnomer, but appeared to the action, and afterwards hi3 full name appeared in the record.
The seventh and last assignment of error is:
“7th. Because it is proved by the-documentary evidence, to wit: the wi’itten purchase of H. S. Kane, of the Tomlinson tract of thirty-seven and three-quarter acres, and the plat and report of the surveyors, James P. Fugate and E. W. Stuart, that the Seott-McKinney house and lot in controversy are in the said Tomlinson tract, owned by H. S. Kane, the landlord of the defendant, and not in the McKinney tract of land claimed by the plaintiff, which house and lot were erroneously *765 found for the plaintiff*, and judgment erroneously rendered in her favor therefor.”
There is oral evidence in the case, expressly proving that the land in controversy is part of the land which was devised to the plaintiff for her life by her husband. The jury found a verdict for the plaintiff, and ■found for her the land mentioned and described in the summons. The defendant moved to set aside the verdict and grant a new trial, because the verdict was contrary to the law and evidence of the case; but the plaintiff entering on the record a release of the piece of about one-half acre aforesaid, the court overruled the motion, and refused to set aside the verdict and grant a new trial, to which ruling of the court the defendant excepted; and in the bill of exception all the evidence given on the trial was set out, but not a certificate of the facts proved, the court certifying its inability to certify the facts because of a conflict in the evidence. Of course this court cannot reverse the judgment of the court upon the motion for a new trial, on the ground that the verdict is contrary to the law and evidence of the ease, but must take that judgment to be correct.
Upon the whole, we are of opinion that there is no error in the judgment, and that it ought fo be affirmed.
Judgment affirmed.