# WHEELING.

## SETZER *v.* BEALE *et als.*

Submitted January 16, 1882.   Decided March 11, 1882.

1. A partnership as between the parties themselves is a voluntary contract between two or more persons for joining together their money, goods, labor or any or all of them under an understanding, that there shall be a communion of profits between them and for carrying on a legal business. (p. 287).

2. A partnership among the parties themselves results from the intention of the parties, to be gathered from the contract or from their relations to and dealings with the property of each other.   (p. 287).

8. If a person contracts with one of several partners to share in that partner's profits and losses, such contract with one partner does not render the person so contracting a partner in the concern, as no stranger can be introduced into the firm as a partner without the concurrence of every member of the firm.   (p. 288).

4. If all the members of a partnership agree to receive a stranger as a member of such partnership, and subsequently one of the partners contracts with him to share with him such partner's profits in the firm, and the other partners are fully advised of such contract and make no objection thereto, such stranger will nevertheless continue a member of the partnership, and he will not cease to be such, unless it appears expressly or by a fair implication from the conduct of the members of the firm, that after such contract there was a mutual understanding, that such stranger was to be no longer a member of the firm.   (p. 297.)

5. The law, which should govern the court in awarding an issue out of chancery, in the setting aside of the verdict of juries and in granting new trials of such issues, and that regulates the court in rendering decrees on the verdicts of juries stated by the court in its opinion.   (p. 289).

6. The court did not err in refusing to permit the bill to be amended by striking out portions of it and interlining it, though it was stated by the plaintiff, that errors had been made in drawing the bill by the counsel.   As the bill had been answered, the court properly required the plaintiff, if he wanted to change its allegations materially, to file a formal amended bill and not alter the original bill by mutilation.   (p. 285).

Appeal from and *supersedeas* to certain decrees of the circuit court of the county of Mason, rendered respectively on the 26th day of April, 1879, on the 24th day of October, 1879, on the 22d day of April, 1880, and on the 13th day of May, 1881, in a cause in said court then pending, wherein George W. Setzer was plaintiff, and Charles T. Beale and others were defendants, allowed upon the petition of said Beale.

Hon. Frank A. Guthrie, special judge, rendered the decrees appealed from.

GREEN, JUDGE, furnishes the following statement of the case :

This is a chancery suit brought in August, 1876, in the circuit court of Mason county by George W. Setzer against Charles T. Beale individually and as executor of his father, James M. H. Beale, and the heirs or devisees of James M. H. Beale, and also James W. Smith, administrator of Alexander McCausland. The main object of this suit was to settle up the partnership of a certain firm, which had been doing a mercantile business at Point Pleasant, in Mason county, and which firm under different names, the plaintiff claimed, consisted of himself owning one third interest, Alexander McCausland owning one third interest, Charles .T. Beale owning one sixth interest, and his father, James M. H. Beale owning one sixth interest. The executor and heirs of James M. H. Beale and Charles T. Beale deny, that he was a partner in this concern. It is admitted by them, that he obtained a large amount of goods, wares and merchandise from this partnership's store for the use of himself and family from time to time; but they insist, that he was simply a customer at the store, and that the partnership had against him only a large open account, which at the time of his death, August 1, 1866, had been for many years barred by the statute of limitations.

The depositions of the plaintiff and of the defendant, Charles T. Beale were taken, which prove, that prior to October 1, 1851, there was a firm known as Beale & Son carrying on a retail mercantile business at Point Pleasant; the members of this firm were James M. H. Beale and his son Charles T.

Beale; that they had at that time in the store a stock of goods worth $1,500.00; that on October 1, 1851, Charles T. Beale without consulting his father entered into a new partnership with others to continue this mercantile business at the same place; that this arrangement was made with Foley and the plaintiff, Setzer; that it was merely verbal, and by it Foley and Setzer each were to put into the partnership $1,500.00 in cash, and Charles T. Beale was to put in the stock of goods, which were then in the store-room, and which were valued at $1,500.00; and each of the parties was to have an equal interest in the partnership, which was to be known as Foley, Setzer & Beale. According to the deposition of Charles T. Beale, on the next day his father complained, that he was not included in this arrangement for the formation of this new firm, when Charles T. Beale says he told him, that he should have one half of the profits of his third interest in the firm. This agreement, he said in his deposition, was merely a verbal agreement, there being no written contract; and his recollection was, that his father was to share in his profits, but was not to share his losses.

The plaintiff, Setzer, in his deposition stated, that after this partnership of Foley, Setzer & Beale was formed, Charles T. Beale came to him, Setzer, and to Foley and said, his father wished to become a member of the firm, and all the parties, Foley, Setzer and Charles T. Beale, acquiesced in Col. J. M. H. Beale becoming a member of the firm, and the Colonel drew up the following paper, which he and his son executed:

"This indenture, made and entered into this 24th November, 1851, between J. M. H. Beale, of the one part, and Charles T. Beale, of the other part, witnesseth: That whereas, the said Charles T. Beale hath entered into a mercantile partnership under the name and firm of Foley, Setzer & Beale, doing business at Point Pleasant, Mason county, Va., and it being the wish of the said J. M. H. Beale and Charles T. Beale, that the said J. M. H. Beale shall be an equal partner with him, the said Charles T. Beale, they therefore hereby bind themselves each to the other in the penalty of $6,000.00 to bear their proper proportion of all that part of the expenses, which may fall to the share of the said Charles T. Beale in the proper legitimate carrying on of the said mercantile firm,

the profits and losses arising therefrom to be equally divided between them, as witness our hands and seals this day and year above written.

"JAMES M. H. BEALE,    [Seal.]
"CHARLES T. BEALE,    [Seal.]"

This paper was left with the new firm and put in their safe. The books of the previous firm of Beale & Son were also left with the new firm. The books of the new firm had been opened October 1, 1851, some seven weeks before this agreement with J. M. H. Beale was signed by him. On these books it appeared by the entry in the stock account, that each of the partners, Foley, Setzer and Charles T. Beale, furnished $1,500.00 of the stock; but about the time that Col. Beale signed this paper he directed an entry to be made by Setzer on the books of the firm of Beale & Son, which credited J. M. H. Beale with one half of the goods, which he put in the firm of Foley, Setzer & Beale and Charles T. Beale with the other half of these goods. Setzer states, that after this time, November 24, 1851, he regarded J. M. H. Beale as one of the firm of Foley, Setzer & Beale. This is denied by Charles T. Beale; but they agree, that Foley died in a short time, November 25, 1852, and his interest being settled by the survivors in this partnership, it was continued under the name of Setzer & Beale till March, 1854, when Alexander McCausland became a partner in the firm, and its name was changed to Setzer, Beale & Co., and it continued in this name till January, 1861, when the name was changed to Beale, Setzer & Co.; and the firm continued its business in this name to July, 1863. This last change in the name was produced by Wetzel and Buffner having had a temporary interest in the firm; but it lasted a brief time, they failing to comply with the terms on which they were to be admitted, and the persons interested in this firm of Beale, Setzer & Co. were the same as in the firm of Setzer, Beale & Co. Neither of the original partners in the firm of Foley, Setzer & Beale except Foley by his death ever ceased to be members of these subsequent firms; and Col. J. M. H. Beale, if he was really a member of the firm of Foley, Setzer & Beale, always continued a member of the subsequent firms, he never having withdrawn from the partnership.

A letter written by Col. J. M. H. Beale in 1853 to Fassit & Co. was proven and relied upon by the plaintiff to show, that both he and J. M. H. Beale regarded Col. Beale as a partner in the firm. This was an open letter sent by Setzer. The debt referred to in it was a debt of Beale & Son. This is the letter:

"POINT PLEASANT, MASON CO., W. VA.,
21st March, 1853.

"*Messrs Fassit & Co.:*

GENTLEMEN—This will be handed to you by our friend, George W. Setzer, who is engaged with us in a mercantile concern at this place. We regret that it has not been in our power to pay everybody by this time, yourselves among others. We are constantly paying and able to pay, but not all at once. We authorize Mr. Setzer to make an arrangement with you, by which your entire debt will be discharged by us in six and twelve months. His signature to two bonds to effect this in our names shall be as good and as binding upon us as if signed by us.

"J. M. H. BEALE,
"*For himself and for Charles T. Beale.*"

Some other facts are relied upon by the plaintiff and proven by depositions as tending to show, that all the members of these several firms regarded J. M. H. Beale as a partner in them. One of these is the fact, that an heir of J. M. H. Beale, a defendant in this cause, threatened Setzer, who was engaged in settling up the business of these several firms, that if he failed to collect a certain debt due one of these firms, he would hold him responsible therefor. One witness proved, that he was in the habit of playing draughts and back-gammon with Col. J. M. H. Beale for years in the counting-room of the store, where the stock of goods of these firms was, and that Setzer, he thinks, spoke of him as a partner; but he speaks of this as only a faint impression, and he says that Col. Beale appeared to take such an interest in the business, as left the impression, that he was a partner. He would call his attention to the goods, when new goods were put in the store, and he remembers particularly his calling his attention to some cutting knives, which Col. Beale said he had ordered Setzer to purchase, and which were bought. But a former

clerk, who had been in the store three or four years, testified, that he did not while there know, that Col. Beale had an interest in the business or was a partner, but that afterwards on June 3, 1873, when Setzer, McCausland and Charles T. Beale were making dividends of some money which they had on hand, Charles T. Beale said to him : "Place my part of the dividend to the credit of my father," and then remarked : "Perhaps you did not know, that my father was a partner of mine in the establishment, but such is the fact." This credit of C. T. Beale's dividend was accordingly put on the books of Setzer, Beale & Co. to the credit of J. M. H. Beale.

Another witness proved, that Col. J. M. H. Beale told him, he got his goods from the store at an advance of twenty-five per cent. on their cost, and that there was an agreement or understanding to that effect between those interested or partners in the firm. It left the impression on the mind of the witness, that he was a partner. And it was proven, that the charges on the books of the firm for goods got by J. M. H. Beale, were at this advance of twenty-five per cent. on their cost price. At another time he said, that there was not much coming to him from the old firm, which left a like impression on the witness's mind.

Smith proved, that he, Smith, bought out the interest of Charles T. Beale in the firm, and that the money, which he paid, was credited at the time on the books to Charles T. Beale, but afterwards one half of this amount paid by him was credited on the books of Beale, Setzer & Co. to James M. H. Beale.

Another witness proves, that after the death of J. M. H. Beale Charles T. Beale told the witness, that if he had not been an honest man, he could have made $1,500.00, as no one would have known, that his father was a partner with him, if he had not told the fact.

A nephew of McCausland, who had acted as agent of his uncle in settlements with the partners, testifies, that they told him, that their interests were equal, and that Charles T. Beale frequently told him, that his father owned an equal interest with himself in the third represented by him in the firm; that after his father's death he frequently promised to pay his father's account with the firm, when he could sell property.

The defendant relied strongly on the admitted fact, that Setzer, the plaintiff, was the active business-man in these firms and had repeatedly had claims due the firms collected by lawsuits, and in none of these law-suits did the declarations ever state J. M. H. Beale to be one of the partners in these firms, though the names of the partners were stated in full in these declarations.

Upon this evidence the circuit court by a decree dated April 26, 1879, ordered an issue to be tried by a jury, whether J. M. H. Beale was a partner in said firms. The evidence before the jury on the trial of this issue was not materially variant from that, which was before the court, when the issue was ordered to be tried, and it need not be here stated. It will suffice to say, that it rather in my judgment strengthened the claim of the plaintiff, that J. M. H. Beale was a partner in these firms; and the jury so found. The verdict of the jury was, that J. M. H. Beale was a partner in the firms. The court refused to set aside this verdict and grant a new trial, certifying the evidence at length and also the four instructions given by the court to the jury, which were as follows :

(No. 1.)

"If the jury believe from the evidence, that a contract was made between J. N. Foley, George W. Setzer, Charles T. Beale and J. M. Beale by which James M. H. Beale became a member of the firm of Foley, Setzer & Beale, that then no after contract or agreement made between C. T. Beale and J. M. H. Beale alone can change or alter the original contract aforesaid, even if Foley and Setzer were fully advised of it knew its contents, and placed and kept it in the safe of the firm."

(No. 2.)

"That if the jury believe from the evidence, that J. M. H. Beale became a member of the firm of Foley, Setzer & Beale, and that afterwards J. M. H. Beale and C. T. Beale drew up and signed the agreement of November the 24th, 1851, and handed the same to Foley & Setzer merely for safe-keeping in the partnership's safe, that said agreement and acts do not rescind, change or modify their relation to each other as members of said firm."

## (No. 3.)

" If the jury believe from the evidence that J. M. H. Beale was at any time a member of the firm of Foley, Setzer & Beale, that then the contract of November 24th, 1851, executed by J. M. H. Beale to C. T. Beale alone, even if assented to by said Foley and Setzer, does not change the relation and liability of J. M. H. Beale to the other members of the firm."

## (No. 4.)

" If the jury believe from the evidence, that J. M. H. Beale after the formation of the firm of Foley, Setzer and Beale became, with the consent of the other members, a partner in the concern, then no subsequent agreement made between J. M. H. Beale and C. T. Beale can modify or change their or either of their relative interests or obligations to such other members, unless each of such other members consented that such relative interests or obligations might be so changed."

On April 22, 1880, the court by its decree declared its opinion, that James M. H. Beale, Charles T. Beale, Alexander McCausland and George W. Setzer were partners in said firms, and referred the cause to a commissioner to settle their partnership accounts. The commissioner did settle these accounts and made his report dated March 4, 1881, which was approved and confirmed by the decree of May 19, 1881, the defendant's exceptions to this report being all overruled. Most of these exceptions are based on the assumption, that J. M. H. Beale was not a partner in these partnerships; and they need not be specified particularly. But one of these exceptions is, that the commissioner's report is based on the evidence of the plaintiff, who is incompetent to testify. Another exception is, that the commissioner reports the dealings of Foley, Setzer & Beale, a firm in which the defendant's intestate McCausland had no interest. The commissioner does make some statements in reference to the business of this firm, but. does not pretend to settle the accounts of this partnership, nor is any portion of the decree of May 19, 1881, based on these statements in reference to the firm of Foley, Setzer & Beale; they are at most merely unnecessary statements, which prejudice no one. This report is further excepted to, because the commissioner allows George W. Setzer

$100.00 for taking care of the books of the concern.   On this subject the commissioner in his report says :   " Your commismissioner would further report, that George W. Setzer, the plaintiff, has had in his charge for many years the books and papers belonging to the various firms, and should be compensated for his trouble in connection therewith.·   There is a large number of these books, which are of exceedingly great value, and the care of them has been no small task.   Your commissioner therefore allows him $100.00 to be paid him by the other partners."   The decree of May 19, 1881, after overruling the exceptions to this report and confirming the same is as follows:

" THURSDAY, the 19th day of May, 1881.

" GEORGE W. SETZER *vs.* C. T. BEALE, in his own right and as executor of J. M. H. Beale, deceased, and others.—In chancery.

" This cause came on this day to be further heard upon the proceedings heretofore had and upon the orders and decrees made therein, and upon the report of John E. Timms, commissioner of this court, to whom this cause was referred by a decree made herein on the 22d day of April, 1880, and upon the exceptions to said report, and was argued by counsel. Upon consideration of all which, the court is of opinion to and doth overrule each and every exception to said commissioner's report.   It is therefore considered by the court, that said report be and the same is hereby approved and confirmed.

" And the court is further of the opinion and doth ascertain, that the assets of the firm of Setzer, Beale & Co. and Beale, Setzer & Co., on hand and collectable, amount to the sum of $4,813.44, and that of this amount there is in cash in the hands of the plaintiff and evidences of debts due said firm held by him together amounting to the sum of $1,994.55, and that the rest of the solvent assets, consisting of a debt due said firm from the defendant, C. T. Beale, in his own right, amounting to the sum of $2,818.91 ; that the several items reported by said commissioner as due the firm aforesaid, specifically set out in exhibits "A," "B," "C" and "D," filed with and made part of said reports, are deemed insolvent and not collectable.   The court doth further ascertain and

decide, that there is due to the plaintiff, G. W. Setzer, as partner of said firm, and he is entitled to receive out of the assets the sum of $1,683.18, and that the personal representative of Alexander McCausland, deceased, in like manner is entitled out of the assets to the sum of $1,665.53, and that the personal representative of J. M. H. Beale, deceased, is also entitled out of said assets to the sum of $1,427.58, and that each of these last named is entitled after the payment to him of the several sums aforesaid to receive out of any of the claims reported as insolvent, or any claims of said firms that may be hereafter collected as follows, to wit : G. W. Setzer, one third part ; A. McCausland's personal representative one third ; and the personal representative of J. M. H. Beale one sixth ; and C. T. Beale in his own right, one sixth ; and it also appearing to and the court doth decide, that C. T. Beale has overdrawn his interest and is indebted to said firm in the sum of $2,818.91. It is therefore adjudged, ordered and decreed by the court, that said G. W. Setzer do pay over to W. R. Gunn, who is hereby appointed a special receiver for that purpose, all moneys in his hands and deliver to him all the evidences of debt and property reported by said commissioner as in the possession of said Setzer ; and that said C. T. Beale do also pay over to said receiver the sum of $2,818.91, the amount of his indebtedness as reported by said commissioner Timms, with interest thereon from the 19th day of May, 1881. And it is further adjudged, ordered and decreed, that unless the said George W. Setzer and the said C. T. Beale do respectively pay over and deliver within thirty days from the rising of this court the moneys and evidences of debt, as hereinbefore directed, to said receiver, that then as to each or either, who may be so in default, the said receiver is hereby authorized, empowered and directed to collect and obtain by legal process such money and evidences of debt; and said receiver is further directed to collect any and all the claims of said firm, that may come into his hands as such receiver ; and he is further directed, out of the funds that may come into his hands first to pay off the costs of this suit, the legal commissions and proper expense attending the collection of the claim, and any other debts of said firm than such as are hereinbefore mentioned, and apply the balance ratably to the payment of the

sums respectively ascertained hereinbefore to be due the said Setzer and the personal representatives of said A. McCausland and J. M. H. Beale, and that any other or further sum that may come into his hands he shall distribute and pay over as follows: To the plaintiff, one third; to said McCausland's personal representative, one third; to the personal representative of J. M. H. Beale, one sixth; to the said C. T. Beale, one sixth; but before receiving any money or evidences of debt or property under this decree, said receiver shall execute a bond with good security before the clerk of this court in the penalty of $5,000.00, conditioned as required by law, and that he report his proceedings under this decree to the next term of this court, until which time this cause is continued."

This decree is based on said report and is in pursuance thereof. I have not thought it necessary to state particularly the pleadings in this cause. So far as it is regarded as desirable they will be stated in the opinion of the Court.

Upon the petition of Charles T. Beale an appeal and *supersedeas* was awarded him by this Court to the decree of April 26, 1879, directing an issue to be tried by the jury, whether James M. H. Beale was a partner in said firms; and to the decree of October 24, 1879, which refused the defendant's motion to set aside the issue theretofore awarded; and to the decree of April 22, 1880, based upon the verdict of the jury and deciding, that James M. H. Beale was a partner in said firms and directing a settlement of these partnership accounts; and to the decree of May 19, 1881, confirming the commissioner's report. The petition insists, that a new trial should have been awarded, and that the instructions given to the jury were erroneous.

*Smith & Knight* for appellant cited the following authorities: Lindley on Partnership, p. 101 § 3; Collyer on Partnership, p. 6 § 1; 2 Bouv. L. Dict. (14th ed.) Partnership p. 285; 2 Story Partnership (8th ed.) 121 and note; 17 Gratt. 321.

*J. W. Hoge and W. R. Gunn* for appellee cited the following authorities: 4 W. Va. 610; 7 W. Va. 665.

Green, Judge, announced the opinion of the Court:

Before considering the main question involved in this cause

I will notice a preliminary question in reference to the pleadings.   The original bill stated, " that the plaintiff together with James M. H. Beale, deceased, and said Alexander McCausland, deceased, and said Charles T. Beale were partners doing business in the town of Point Pleasant, State of West Virginia, from the year 1854 to July, 1863, and were actively engaged as such during that time ; that the business aforesaid was carried on in the name and style of Setzer, Beale & Co. from 1854 until January, 1861, and from this last date the firm was known and styled Beale, Setzer & Co. to July, 1863.   Plaintiff alleges, that the said change of the partnership-name did not affect the relative interests of the original partners as to each other or any one else ; that the aforesaid original partners were to share in the profits and losses of said concern according to their several and respective interests therein, which interests the plaintiff avers to be as follows :  Himself one third, said McCausland one third and said Charles T. Beale representing one third, one moiety of which last interest was owned in fact by said James M. H. Beale, deceased, who, plaintiff alleges, was a silent partner in said firm to the extent of his said interest.    Plaintiff also avers further, that he was not advised of the interest aforesaid being held and owned by said James M. H. Beale, and did not know, that he was the owner thereof, until after the year 1865, but alleges that the said Charles T. Beale was all the time during said partnership so advised and did know of the interest thus held by J. M. H. Beale, and that he, the said Charles T. Beale, kept from the plaintiff the knowledge of such interest of said J. M. H. Beale during the said partnership and until after the year 1865."

To this bill the defendant Charles T. Beale filed an answer, in which he took the position, that "a partnership was a matter of·contract.   It can only be formed and exist by the express mutual and concurrent understanding, arrangement and agreement of all the parties thereto ; and one person can no more be a partner in a firm without the knowledge and assent of all his co-partners, than he could sell his home and execute a deed thereof without knowing it;" and therefore insists, that the bill should be dismissed as fatally defective on its face.   The plaintiff then moved the court to grant him leave to amend by striking out those portions of the bill and by

interlining it and making other and different allegations. The court refused to permit him to amend in this manner but granted him leave to file an ameneded bill ; and the plaintiff excepted to the action of the court, but did file an amended bill as allowed by the court, in which speaking of the portion of the original bill above quoted he says : "your orator would now explicitly state and without mental reservation or qualification, charge that so much of his said original bill as is hereinbefore quoted and repeated, except so far as the same is corrected by this amended bill, is untrue and was written and prepared by his counsel, when your orator was not present, under a misapprehension of the facts, that he desired to have set forth in his said original bill, a misapprehension superinduced, you orator has no doubt, by his confused statement to him of his case."

The amended bill then proceeds to state the plaintiff's case substantially, as it has been set out in the statement of the case preceding this opinïon, not however going into any details, as to how J. M. H. Beâle became a member of the firm of Foley, Setzer & Beale, but simply alleging, that he was a partner in this firm and had put $750.00 of merchandise in it as stock, and stating positively, that he was a member of the subsequent firms of Setzer, Beal & Co. and Beale, Setzer & Co., owning one sixth interest in them as a partner. This amended bill was replied to, the answer setting out the defendant's case substantially as hereinbefore stated, but not in detail. The answer was replied to generally and depositions on both sides taken. It is obvious, that the court did not err in refusing to permit the plaintiff to amend his bill by obliterating a portion of it; but upon the allegation, that the counsel had erred in drawing the bill from a misapprehension of the facts stated by the plaintiff to him, it was proper for the court to permit the plaintiff to amend by filing formally an amended bill, as was done.

The principal question in this case is : Was James M. H. Beale as between the parties a partner in the firms of Setzer, Beale & Co. and Beale, Setzer & Co. ? This question must be answered by determining, whether he was a partner in the firm of Foley, Setzer & Beale. If he was, then he was also a partner in these subsequent

firms, which were formed by the admission into the firm of McCausland in lieu of Foley, who had died; for it is not pretended, that any other change of partners in the firm was ever made, the evidence proving, that none of the original partners in the firm ever withdrew from it; and if Col. J. M. H. Beale was a member of the firm of Foley, Setzer & Beale, he must have continued a member in the subsequent firms, as it is not pretended, that he was subsequently excluded as a partner in the subsequent firms; and of course he would have remained a partner in the subsequent firms, just as Setzer and Charles T. Beale remained partners. The only change made was by admitting a new partner; and no change was made by excluding any old partner.

A partnership between the parties is a voluntary contract between two or more persons for joining together their moneys, goods, labor and skill or any or all of them with an understanding, that there shall be a communion of profits between them and for the carrying on of a legal business. By a communion of profits I mean a joint and mutual interest in the profits, not simply a joint interest in the property; for persons may be jointly concerned in a purchase of goods, yet if they are not jointly concerned in the profits arising from the goods after their purchase, they are not partners as between themselves. The authorities fully sustain this definition of a partnership *inter se* given by Colyer. See *Chace* v. *Barrett*, 4 Paige (N. Y.) 148; *Bowman* v. *Bailey*, 10 Vt. 170; *Patison* v. *Blanchard*, 1 Selden (5 N. Y.) 186; *Robbins* v. *Laswell*, 27 Ill. 365; *Philips* v. *Philips*, 49 Ill. 437; *Chapline, Lewis & Co.* v. *Conant & Wheat*, 3 W. Va 507. A partnership, so far as third parties, creditors for example, are concerned, may exist without any contract between the parties forming the partnership and contrary to the intention of the parties; but a partnership in fact, that is, a partnership as between the parties results from the intention of the parties to be gathered from their contract, if there be one, or if not, from their relations and dealings with the property of each other. See *Salter* v. *Ham et al.*, 31 N. Y. 321; *Hazard* v. *Hazard*, 1 Story 371.

From these views of what constitutes a partnership as between the parties themselves, it necessarily follows, that if a

stranger contracts with one of several partners to share in that partner's profits, such a contract does not render the stranger so contracting a partner in the concern. It is well settled, that no stranger can be introduced into a firm as a partner without the concurrence of every member of the firm. See *Mason* v. *Connell,* 1 Whart. 381; *Kingman* v. *Spurr,* 7 Pick. 235; *Pierce* v. *Whitley,* 39 Ala. 172; *Mathewson* v. *Clarke,* 6 How. (U. S.) 122; *Murray* v. *Bogart,* 14 Johns. 318; *Channell* v. *Fassitt,* 16 Ohio 166; *Gilmore* v. *Black,* 11 Me. 488. It may be, that such a contract by one partner with a stranger may after the dissolution of the partnership give such stranger an interest in the assets of the partnership as an equitable assignee of a portion of the interest of the particular partner, who contracted with him; but it never can make such stranger a partner in the concern or give him the rights or impose on him the responsibilities of a partner. See *Mathewson* v. *Clarke,* 6 How. (U. S.) 122.

It is therefore clear, that if the case had been such, as was stated in that portion of the original bill above quoted, and alleged in the amended bill to be false, James M. H. Beale could not possibly as between the parties themselves have been a partner in the firm, whose business the bill sought to have settled by the court. If this bill had not been amended, the decrees of the court based on the assumption, that James M. H. Beale was such partner, would have clearly been erroneous. But the amended bill omitting these fatal statements correctly charges James M. H. Beale to have been a partner in these firms. The first enquiry then is: Did the circuit court err in ordering the issue to be tried by a jury, whether J. M. H. Beale was a partner in these firms? The court of chancery often directs an issue, when the evidence is so contradictory as to render an open examination of the witnesses before a jury necessary and proper, and not unfrequently the evidence is so equally balanced on both sides, that it is difficult to say, which scale preponderates. In such case an issue is of advantage and proper to satisfy the conscience of the chancellor. But it does not follow, that an issue is necessary and proper in every case, where the evidence happens to be conflicting. If this was the rule, the chief time of the chancery courts would be occupied by trials before juries, or in

considering their verdicts. The circuit courts and the judges of this Court are constantly called upon to decide questions of fact upon testimony of a very conflicting character. No court of equity is bound to direct an issue, on the mere ground that the evidence is contradictory; but it may judge of the weight of evidence and, if its conscience is satisfied, decide without a jury. See *Hord's adm'r* v. *Colbert et al.*, 28 Gratt. 60; *Nice* v. *Purcell*, H. & M. 372; *Rohrer* v. *Travers*, 11 W. Va. 146; *Arnold* v. *Arnold*, 11 W. Va. 449; *Anderson* v. *Cranmer et al.*, 11 W. Va. 562; *Jarrett* v. *Jarrett*, 11 W. Va. 584; *Nease* v. *Capehart*, 15 W. Va. 299.

The rules to be deduced from these decisions of our Court, which should govern in ordering and acting upon issues out of chancery are : The chancellor may in the exercise of his discretion either direct an issue or refuse to do so; but this discretion must be properly exercised, and a mistake in its exercise is a just ground of appeal. When there is such a conflict of evidence, that it is so nearly balanced, as to make it doubtful, on which side it preponderates, an issue ought to be directed; but when, though there be a conflict, it is not of such a character, no issue ought to be ordered, and such doubt in the mind of the chancellor must not be a factitious but a reasonable one justified by such conflict of the evidence. Even after a verdict is rendered by a jury on an issue out of chancery, if upon the proofs, as they stood at the hearing, an issue ought not to have been ordered, it is the duty of the chancellor notwithstanding the verdict to set aside the order directing the issue and enter a decree on the merits as disclosed by the proofs on the hearing, when the issue was ordered. And it is the duty of an Appellate Court in reviewing a decree founded on the verdict of a jury, rendered on an issue out of chancery, to look to the state of the proofs, at the time the issue was ordered, and if satisfied that the chancellor has improperly exercised his discretion in directing the issue, to render a decree nothwithstanding the verdict according to the merits as disclosed by the proofs on the hearing, when the issue was ordered. See *Anderson* v. *Cranmer*, 11 W. Va. 562; *Jarrett* v. *Jarrett*, 11 W. Va. 584. And on the contrary when an issue out of chancery is properly directed and regularly tried, and a verdict is rendered by a jury, unless there is

some sufficient ground for setting it aside, it must be held to be conclusive of the facts submitted, the chancellor's conscience must be satisfied by such a verdict, and he must render a decree in accordance therewith.    See *Nease* v. *Capehart ex'r*, 15 W. Va. 299.

The appellant's counsel insist, that there was not in this cause, when the circuit court ordered the issue to be tried by the jury, any conflict of evidence so nearly balanced as to make it doubtful, on which side was the preponderance, but that the depositions, which had then been taken, ought to have satisfied the court, that James M. H. Beale was not as between the parties a partner in the mercantile partnership named in the bill.    According to this view of the evidence it satisfactorily established these to be the facts :

J. M. H. Beale and C. T. Beale were carrying on a mercantile business at Point Pleasant, Mason county, under the firm name of Beale & Son, prior to October 1, 1851, and about that time dissolved and ceased business with a stock of goods on hand.    And thereupon James Foley, George W. Setzer and C. T. Beale formed a partnership to carry on a mercantile business at the same place under the firm name of Foley, Setzer & Beale, each partner paying in $1,500.00, and having a one third interest; and C. T. Beale put in for his share of the capital, the stock of goods which Beale & Son had on hand, and which was valued at $1,500.00, and the other partners put in their share in cash ; and the new firm commenced business October 1, 1851.

The books of the new firm were opened in accordance with this arrangement, showing that there were then the three partners—Foley, Setzer and C. T. Beale, and that C. T. Beale had put in his share, $1,500.00, of the original capital.

The firm continued in business in this way for nearly two months, till November 24, 1851, when C. T. Beale came to Foley & Setzer and said that his father, J. M. H. Beale, wished to become a member of the firm, or wished to become a partner of C. T. Beale, the plaintiff, Setzer, does not remember the exact language, to which Foley and Setzer assented, and thereupon C. T. Beale and J. M. H. Beale entered into the contract of November 24, 1851, found on pages 57 and 58 of record, which was delivered to the plaintiff, Setzer, to

keep. And this was all that took place, and all the contract or arrangement ever made to constitute J. M. H. Beale a member of the firm of Foley, Setzer & Beale. No change was made in the books of the firm, and they still continued to show but three partners, Foley, Setzer and C. T, Beale. And that each was entitled to a one third interest.

An entry was made on the books of Beale & Son to balance the account between the two partners, J. M. H. Beale and C. T. Beale, so as to show, that each had received one half of the stock of goods on hand, and this was in precise accordance with the terms of the written contract of November 24, 1851. And the firm of Foley, Setzer & Beale had nothing to do with that entry, and were not bound or affected by it.

Foley died in November, 1852, and the firm continued in business under the name of Setzer & Beale from November, 1852, till 1854, when Alexander McCausland came into the firm, and it then took the name of Setzer, Beale & Co., and continued business under that name till June, 1861, when it took the firm name of Beale, Setzer & Co., without any change of partners or interest, and so went on till June, 1863, when C. T. Beale sold out to J. P. R. B. Smith his one third interest. See eleventh question and answer of Setzer's deposition.

During all this time and these various changes no new contract or arrangement whatever was made with J. M. H. Beale. It is not claimed, that he was ever once consulted about them, or that there was any consultation, contract, or transaction whatever with him in regard to them by the other parties, or any of them.

If this be a correct view of the facts proven by the depositions, the conclusion reached by the counsel for the appellant is correct. If it be true, as the counsel for the appellant asserts, " that the contract between J. M. H. Beale and Charles T. Beale dated November 24, 1851, was the whole and only contract and arrangement ever made with or by J. M. H. Beale in connection with this partnership," then clearly J. M. H. Beale was not a partner in the firm of Foley, Setzer & Beale or any of its successors, and no issue ought to have been ordered by the court, for clearly it was its duty to construe this written contract and to determine its legal effect, and the determination of its legal meaning and effect could not properly be submit-

ted to a jury. See *Johnson's ex'rs* v. *Jennings's adm'r,* 10 Gratt. 1; *Bartley* v. *McKinney,* 28 Gratt. 750. Charles T. Beale, one of the partners of the firm of Foley, Setzer & Beale, and James M. H. Beale were the only parties to this written contract, and by it they " bound themselves to bear their proper proportions of all that part of the expenses, which may fall to the share of the said Charles T. Beale in the proper and legitimate carrying on of the said mercantile firm, the profits and losses arising therefrom to be equally divided between them."

The authorities, which we have cited, unquestionably show that this agreement could not have constituted J. M. H. Beale a member of this mercantile firm. And I take it for granted, that the circuit court never for a moment supposed it did and never intended in directing the issue to leave it to the jury to consider, whether this written agreement had this effect. The real question before the court was whether the depositions did or did not establish, that this was the only agreement or understanding, which J. M. H. Beale had in connection with this co-partnership, and whether the depositions did or did not establish, that J. M. H. Beale had another and different agreement not with Charles T. Beale but with each and all of the members of the firm of Foley, Setzer & Beale, and whether by this agreement J. M. H. Beale was not to be a member of the firm of Foley, Setzer & Beale.

Do not the facts appearing from the depositions tend to prove, that there was a verbal agreement between J. M. H. Beale and all the members of the firm of Foley, Setzer & Beale separate and distinct from this written agreement, and that by this verbal contract J. M. H. Beale was to be a member of this firm. There certainly was evidence tending to prove this independent verbal contract. The evidence was contradictory, and the facts, which were proven, tended to the establishment of opposite conclusions. The real question for us to determine is, whether the facts and evidence tending to the conclusion, that this written agreement between J. M. H. Beale and his son Charles T. Beale was the sole and only contract and arrangement ever made with or by J. M. H. Beale in connection with this co-partnership, and those tending to the contrary conclusions, that there was another distinct

verbal agreement between J. M. H. Beale and each of the members of the firm of Foley, Setzer & Beale, whereby J. M. H. Beale was to be a member of this firm, were so nearly balanced as to make it very doubtful, on which side was the preponderance. For if this be so, according to the principles above stated it was the duty of the court to direct the issue which it ordered.

In his deposition George W. Setzer says: " After the partnership was formed, Col. J. M. H. Beale became a member. The books were already started as the firm of Foley, Setzer & Beale. Charles T. Beale came to Foley and myself and said, that his father wished to become a member of the firm. Foley, myself and Charles T. Beale acquiesced in it, and then Col. Beale drew up an article of agreement between himself and Charles his son." He produces this article of agreement; and it it is the one above referred to dated November 24, 1851. He states, that it was left with him and put in the safe of the firm of Foley, Setzer & Beale. The question on which this whole cause on its merits turns is, whether this written agreement was the simple reduction into writing of this verbal agreement referred to by Setzer, or a distinct and separate agreement. As thus stated by Setzer they would seem to be distinct and separate agreements. The verbal agreement, if correctly stated, certainly made J. M. H. Beale a member of the firm of Foley, Setzer & Beale, and the written agreement certainly did not. The verbal agreement was between Foley, Setzer & Beale on the one side and J. M. H. Beale on the other. The written agreement was simply between J. M. H. Beale and Charles T. Beale and in it as written neither Foley nor Setzer had any interest. There was in fact no sort of use in or necessity for consulting Foley and Setzer, if the only agreement to be entered into had been that expressed in the written agreement. It may be however, that after the lapse of twenty-five years Setzer may well have forgotten what were the terms of this verbal agreement, and in cross-examination he admits, that he does not remember the exact language, which was used. As indeed it is obvious he could not.

It is improbable as an abstract proposition, that two separate agreements would have been entered into at or about the

same time and relative to the same subject-matter, and the leaving of the written agreement with Foley, Setzer & Beale and their keeping it in their safe tend to show, that it expressed the understanding, which had been had between Foley, Setzer & Beale and J. M. H. Beale, and this view is to some extent strengthened by the facts, that the books, which had been opened in the name of Foley, Setzer & Beale, and the stock so charged continued to be so kept, the charge of the stock being unchanged, and that all suits brought by this or the subsequent firms were in the name of the other partners, J. M. H. Beale not being named in the declaration as a partner. But this mode of keeping the books and bringing suits is entitled, it seems to me, to but little weight, as it is the usual mode of keeping books and suing, when one of the partners is either a secret or a dormant partner. And for a like reason not much weight should be attached to the fact, that one of the clerks, who was in the store three or four years, did not, while he was a clerk, know that James M. H. Beale was a partner in the firm.

On the other hand there are facts and evidence tending to show, that J. M. H. Beale by a verbal contract made with all the members of the firm of Foley, Setzer and Beale became a member of the firm, and that the contract dated November 4, 1851, between J. M. H. Beale and his son was a separate and distinct contract not made at the instance of the other members of the firm, and with which they had nothing to do, except that it was left with them for safe-keeping, and that after this verbal contract, whereby J. M. H. Beale became a partner of the firm, all the members of the firm treated and regarded him as a partner. First and principal there is the direct evidence of Setzer, that there was such a verbal contract, and it is obvious, that it is materially different from the written agreement. Then Setzer testifies, that from the time, when this contract was made, he always recognized J. M. H. Beale as a member of the firm. Then at the time when this contract was made, an entry was made by Setzer on the books of the firm of Beale & Son, which were in the possession of the firm of Foley, Setzer & Beale, whereby J. M. H. Beale was credited with $750.00 of goods put into the firm

of Foley, Setzer & Beale, and this entry was made by J. M. H. Beale's direction.

Again it is in the abstract probable, that there was such verbal agreement, that J. M. H. Beale should be a member of the firm of Foley, Setzer & Beale. J. M. H. Beale and his son Charles T. Beale as partners had been carrying on a mercantile business in the same store-room. The son had formed this new partnership on October 1, 1851, without consulting the father and put in the entire stock of goods, $1,500.00, of the father and son. Charles T. Beale testifies, that in a short time, probably the very next day, his father asked, why he the father was not included in the arrangement, whereby this new firm was formed. He says he answered, he should have half the profits of his third interest, and this satisfied him. There was no written agreement, and the agreement was, that he was to have half of the profits and was not to bear any part of the losses. We know, that he was mistaken both about there being no written agreement and about his father having to bear no part of the losses. The statement made by Setzer seems to be the most probable : That after the father had thus complained, because he was not a member of the new firm, the son went to the other members of the new firm and proposed, that his father be admitted as a partner, and they consented thereto. It was perfectly natural, that, as he had been conducting business in the store-room with his son, and their goods were left in the store, if he desired, he should be admitted as a partner; and it was equally natural, that the arrangement should have been merely verbal. For this partnership had been formed by a merely verbal contract, and all persons afterwards admitted as partners were admitted by mere verbal contracts. It is therefore improbable that they would desire this agreement to be reduced to writing. And the written contract therefore between Colonel Beale and his son would probably be drawn without the direction of either Foley or Setzer. They probably had nothing to do with it, except that, after it had been drawn and brought to Setzer, he put it in the safe for safe-keeping. This is the fair inference from Setzer's deposition.

Another fact tends to show, that there was such verbal agreement distinct from this written contract. Col. Beale

received out of the store more than $4,000.00 worth of goods, his dealing extending through twelve years, yet he never paid for these goods or gave his note for them, which would seem to be a strange mode of dealing with him, if he had not been regarded as a partner ; and it would be perfectly natural, if he was so regarded. Then all these goods were charged to him at twenty-five per cent. on their cost-price, which was less than others were charged. This would seem to be in accordance with an arrangement, which was proven, that the partners in the firm should be so charged. Again, some eighteen months after the formation of this partnership Col. J. M. H. Beale for himself and his son Charles T. Beale writes an open letter introducing Setzer to a firm in Philadelphia as authorized to arrange a debt Beale & Son owed ; and in this letter he says : "This will be handed to you by our friend George W. Setzer, who is engaged with us in a mercantile firm at this place." This seems to show, that all the parties regarded J. M. H. Beale as a partner in this firm.

Though Col. Beale as well as his son had but little to do with the active business of this firm, yet there was some testimony, that at times he said and did things, which left on the minds of witnesses the impression, that he was a partner in the firm and was so regarded by Setzer. I need not specify this testimony as it has been already stated. There is also some other testimony, which bears on this subject. which I need not specify, as it has been set out in stating the case and is entitled to but little consideration, some of it tending slightly to prove J. M. H. Beale to have been a partner and some tending slightly to prove the contrary.

It seems to me after carefully studying all, that is contained in the depositions, when the court heard this case, that the facts and testimony were so conflicting as to render it very doubtful, on which side it preponderated ; and that on the principles, which we have laid down, the court was justified in ordering an issue to be tried by a jury, whether J. M. H. Beale was or was not a member of those firms. If I were to make a guess, I should suppose, that perhaps the truth might be, that there was a verbal agreement, whereby J. M. H. Beale became a member of this firm, this verbal agreement being made with all the members of the firm, and afterwards

J. M. H. Beale wrote the written agreement signed by him and his son without the knowledge or direction of the other members of the firm, and the first they knew of it was, when it was left with Setzer to be put in the safe of the firm for safe-keeping; and that neither Colonel Beale nor any of the parties supposed, that the legal effect of this paper was in any respect different from the legal effect of the verbal contract, which he had made with all the members of the firm, whereby he became a partner.

It would seem obvious, that if the members of this firm did not direct and had no knowledge, that this agreement was to be written, till after it had been executed, though they subsequently knew its contents and made no objection to its terms, yet it would not modify or affect their verbal contract with Colonel Beale. They were not called upon to dissent from it; and they could not legally assent to this written contract, as they were not parties to it, and it did not according to its legal effect in any manner concern them. It would have had its full operation as much without as with their assent. Their dissent from it would have been in law as ineffective as their assent.

The additional parol testimony before the jury on the trial of the issue did not much vary the case. It added somewhat to the probability, that J. M. H. Beale was a member of these partnerships.

The instructions given by the court were in accord with the law, as we have stated it, and fairly submitted to the determination of the jury on all the evidence the question, whether there was a verbal agreement between J. M. H. Beale and all the partners of the firm of Foley, Setzer & Beale independent of and distinct from the written agreement subsequently made by J. M. H. Beale and his son. And the jury concluded, that there was, and found, that J. M. H. Beale was a member of these firms. On the principles we have laid down the court refused to set aside this verdict and grant a new trial; and its action, I presume, would have been the same, had the verdict of the jury been the reverse. It was a question of fact for the jury, which was so doubtful, as to render it improper for the court to interfere with their verdict. When the commissioner was settling these partnership accounts, he could not

of course do otherwise than regard J. M. H. Beale as a partner in these firms, the court having so decided in accordance with the verdict. There was no objection to his considering in settling these accounts the testimony of George W. Setzer, the plaintiff, as he did not testify in relation to any conversation or transaction between himself and the decedent J. M. H. Beale personally. There was no prejudice to the rights of any one in the commissioner reporting what he did with reference to the firm of Foley, Setzer & Beale, as no part of the decree confirming this commissioner's report is based on this portion of his report.

It does not very clearly appear what the allowance of $100.00 to George W. Setzer made by the commissioner and excepted to was made for. We may infer from his report, that it was made as "a compensation for his trouble in connection with the books and papers of the different firms of which he had charge for many years." What was the nature of his trouble in this connection does not appear. The charge is a small one, and it is borne by all the parties, and, as it does not appear affirmatively to be erroneous, I think the court did not err in overruling the exception to this small allowance. For the reasons we have stated all the other exceptions to the commissioner's report were properly overruled.

We are therefore of the opinion, that there was no error in any of the decrees of the court below, and they must be affirmed, and that the appellees recover of the appellants their costs expended in this Court and $30.00 damages; and this cause must be remanded to the circuit court of Mason county to be further proceeded with according to the principles governing courts of equity.

THE OTHER JUDGES CONCURRED.

DECREES AFFIRMED. CAUSE REMANDED.