# WHEELING.

## DILS'S ADM'R v. BRIDGE *et al.*

### Submitted August 11, 1882—Decided December 1, 1883.

#### (*WOODS, JUDGE, Absent.)

An arrangement is entered into between A. and B. to operate a saw-mill owned by A., whereby it is agreed that B. shall assist A. to run the mill, furnish the means to stock and keep it in order and support A.'s family; that A. and his sons are to operate the mill, and B. is to sell the lumber and, after deducting from the proceeds of the sales the means so furnished by him and pay for his services, the net surplus or profit is to be applied to the payment of a debt due from A. to B. HELD:

  I. The said arrangement does not constitute a partnership, *inter se*, between A. and B.;

  II. In a settlement between them A. is not entitled to charge either B. or the expense account for the labor of himself and sons and for boarding hands while operating the mill under said arrangement. (p. —.)

The facts of the case are stated in the opinion of the Court.

*J. J. Jacob* and *J. B. Jackson* for appellant.

*J. G. McCluer, John A. Hutchinson* and *D. D. Johnson* for appellee.

SNYDER, JUDGE:

In May, 1868, W. S. Dils bought from H. B. Bridge and Ralph Starling a portable saw-mill at the price of two

---

*Cause submitted before Judge Woods was appointed.

thousand five hundred dollars.  In July, 1869, Dils agreed that Bridge might have a carding machine he then owned in part payment for said saw-mill, but whether Bridge was to take the carding Machine at six hundred dollars or merely to sell it and credit the proceeds of the sale to Dils is a disputed fact.  No payment having been made on said saw-mill unless the said carding machine be treated as such, and Dils being without means to run said mill or pay for it, Bridge who was an experienced mill-man suggested to Dils an arrangement by which the said mill could be made pay for itself which was acceded to by Dils and thereupon about August, 1869, a verbal agreement was entered into between said Bridge and Dils to the effect following : Bridge was to furnish the means to stock the mill with lumber, keep it in order and help to run it and aid Dils to support his family, and Dils and his boys were to go to work and run the mill with the assistance of Bridge.  The sawed lumber was to be sold by Bridge and after deducting the cost and expenses of stocking the mill, pay for Bridge's services and whatever Bridge might pay for the support of Dils and his family, the residue of the proceeds of the sales of lumber was to be credited to Dils on the purchase-money due from Dils on the mill.

In pursuance of this agreement the parties run the mill from about September, 1869, to June, 1871, and during that time sawed and sold a considerable quantity of lumber.

In the fall of 1871, Dils authorized Bridge to sell the mill, which he did to Kite and Climer for two hundred thousand feet of lumber to be delivered to Bridge in six, twelve, eighteen and twenty-four months from September 25, 1871, the date of the sale.  The greater part of this lumber was delivered to Bridge and he sold it and applied the proceeds as a credit on the purchase-money still due from Dils for the mill.

No settlement was made between the parties and in April, 1874, Dils brought this suit for a settlement of these transactions, alleging that the said Bridge and Starling were overpaid for said mill and that they were indebted to him one thousand five hundred dollars, and also that they were non-residents of the State.  The said Bridge and Starling and Kite and Climer were made defendants.  An attachment for

one thousand five hundred dollars was sued out against Bridge and Starling which was levied on a barge loaded with lumber. Bridge replevied the property levied by giving a bond with S. A. Jenne as surety. Process having been served on all the defendants, Bridge appeared and answered and the bill was taken for confessed as to all the other defendants.

The cause was referred to a commissioner to state and settle the accounts of the transactions between the plaintiff and the defendants, Bridge and Starling, and between the latter and said Kite and Climer, and also to ascertain the money, property or other credits received by Bridge and Starling on account of the running of the saw-mill under the aforesaid verbal contract.

The commissioner made a report which was excepted to and the cause was then referred to another commissioner to re-state the accounts ordered. This latter commissioner made and filed his report of the transactions between the parties, and as the result of his conclusions he stated the following account between Bridge and Dils:

"H. B. BRIDGE,
        *To* W. S. DILS:

| | |
|---|---:|
| To work of self and two sons from Sept., 1869, to May 8th, 1870, as per Exhibit 'H.' | $ 317 50 |
| 1870. | |
| Oct. —.—To board of Bridge 3 months, $4 per week, | 48 00 |
| Nov. —.—To — received for lumber sold M. Dils... | 34 75 |
| Dec. —.—To amount of value of lumber taken from Claysville, 93,000 ft. @ 16 | 1,488 |
| 1871. | |
| Mar. 2d.—To am't received for sawing for Barrett | 10 00 |
| Mar. 2d.—To am't received for sawing for D. Kincheloe | 3 60 |
| March 2.—To am't received from Gossarge | 12 00 |
| April —.—To cash from Hamer and Creel | 2 20 |
| —To cash for two walnut b'ds sold Creel... | 1 00 |
| —To am't received from Barrett on lumber | 9 00 |
| —To lumber sold Dudley and Hiteshew... | 800 50 |
| May 10.—To one carding machine | 600 00 |
| —To boarding hands | 100 00 |
| Sept. 25 — " amount received for sale of lumber from... | |
| — " contract with Kight & Clammer | 2,076 55 |
| | $5,515 55 |

CONTRA.

| | | |
|---|---:|---:|
| By amount of H. B. Bridge's account not disputed, and items allowed as per this report........... ................ | | $1,266 89 |
| By note of W. S. Dils, dated December 12, 1868............................. | $2,500 | |
| Interest from May 18th, 1868, to May 18th, 1868, the account paying it then | 450 | |
| | | $2,950 |
| By amount of note of W. S. Dils, assigned by Dudley and Hiteshew......' | 325 | |
| Interest —— Aug. 25th, 1868, to Sept. 25th, '71........................... | 60 12 | |
| | | $385 12 |
| By amount of note paid by H. B. Bridge, for acc't W. S. Dils............... | $412 78 | |
| Int. —— Aug. 25th, 1869, to Sept. 25th, '71................ ........:.............:....: | 51 60 | |
| | | $464 38 |
| | | $5,066 39 |
| Balance due Dils Sept. 25th, 1871......... | | $449 16" |

The defendant Bridge excepted to said report and account because the commissioner allowed the plaintiff certain specified items and disallowed a number of others to which exceptant was entitled. What these items were I deem it unnecessary to state as the whole account will have to be set aside on the following exception of the defendant Bridge, which is, that the commissioner erroneously charged the exceptant for the work done by plaintiff and his sons under the verbal agreement for the running of the saw-mill and for boarding hands, &c. There were other exceptions by Bridge but they need not be stated.

On April 13, 1878, the court by its decree overruled all of said exceptions and confirmed the report and decreed that the plaintiff recover from the defendant, Bridge, six hundred and fifty-two dollars and fifty-five cents, being the four hundred and forty-nine dollars and sixteen cents found by the commissioner with interest added to date of the decree, and the costs of this suit. The decree also directed the defendant Bridge and his surety to deliver to the sheriff of Wood county the barge and lumber levied on by the plaintiff's attachment in order that the same might be sold, &c. From this decree the defendant Bridge appealed to this Court.

The material error assigned by the appellant is, that the court improperly overruled his exception to the report of the commissioner in which he objected to the charges allowed the plaintiff for work done by himself and sons and for boarding hands during the operation of a saw-mill under the verbal agreement between plaintiff and appellant. A reference to the account of the commissioner will show that these charges aggregate four hundred and sixty-five dollars and fifty cents. The evidence of the plaintiff as well as that of the defendants prove that the plaintiff was to receive the whole proceeds of the lumber sawed and sold under said agreement after deducting the expenses of running the mill. The labor of plaintiff and his sons and boarding hands was a part of the expenses of running the mill and could, therefore, if charged at all be charged only to the expense account of the mill, and under no construction of the agreement could they be charged to appellant.

This agreement did not amount to a partnership between plaintiff and Bridge for the reason that it wants the essential element of communion of profit and loss between them. A partnership as between the parties themselves is a voluntary contract between two or more persons for joining together their money, goods, labor or any or all of them under an understanding or agreement that there shall be a communion of profit and loss between them in carrying on a lawful business. *Setzer* v. *Beale*, 19 W. Va. 274; Collyer on Part. sec. 2.

In this verbal arrangement the whole of the net profits were to go to the benefit of the appellee, Dils. And if there was any loss beyond the labor of Dils and his sons such loss would have fallen on the appellant because he agreed to furnish the means to stock and run the mill and there was no provision for the return of the means so furnished, except from the proceeds of the manufactured lumber. Without undertaking the duties of an accountant or commissioner, which this Court cannot be expected to do, I cannot ascertain from the report of the commissioner whether there were any profits made in this venture or not, but it is very evident that if the charges for the labor of Dils and his sons is added to the expenses paid by Bridge for running the mill and sup-

porting the family of Dils, there were no profits but an actual loss. The obvious purpose of Bridge in making this agreement was to enable Dils to pay for the mill, and the sole benefit to him was the expectation that from the operation of the mill there would arise a surplus over and above the means he would have to furnish which he would get as a payment on the debt due for the mill. This surplus, if made at all, would necessarily come from the difference between cost of manufacturing the lumber, excluding the labor of Dils and his sons, and the proceeds of the sale of the lumber. In effect he was to have the benefit of the labor of Dils and his sons in order to increase the profits to be applied to the payment of said debt. This labor was all that Dils risked in the arrangement while Bridge ventured his own services and the means he furnished to run the mill and support Dils and his family. If Bridge is also charged with the labor of Dils and his sons and for boarding hands, as was done by the commissioner and the circuit court, then the arrangement would amount to nothing. Dils would be treated as an employe of Bridge and not as the proprietor of the mill. If he was a mere employe he could certainly not at the same time be entitled to the net profits. The arrangement as shown by the testimony of Dils as well as Bridge was that Dils was to have the benefit of the profits and, therefore, he could not also be entitled to pay for services and for boarding hands from Bridge. What his services and the cost of boarding might be were immaterial matters in the account between the parties. By omitting any charges on that account the net profits would be increased by their value and Dils would get the benefit of them to the extent the profits were increased thereby. And if there was a loss he must lose those charges. It would not be just or according to the agreement to put such loss on Bridge. I am, therefore, of opinion that the court erred in allowing to Dils any charges for the labor of himself and sons and for boarding hands while the mill was operated under said verbal agreement. In regard to those matters the court should have directed an account to ascertain what was the excess of the earnings of said saw-mill over and above the means furnished by said Bridge for running it and supporting Dils's family, and the

value of Bridge's services for helping to run the mill. And this excess, if anything, should be credited on the debt due from Dils on the purchase of the mill. But no account should be taken or charged to Bridge or the expenses of running the mill for the labor of Dils and his sons or for boarding hands by Dils.

The other exceptions of the appellant to the commissioner's report and assignment of error relied on in this Court depend entirely upon the weight of the evidence in the cause, and as the whole report must be set aside and a new account directed for the error aforesaid, I do not deem it necessary to express any opinion on said other matters. The evidence may be wholly different or materially so when said new account is taken and, therefore, any opinion expressed on the evidence as it now appears might be not only entirely useless but misleading in its effects. For the reasons aforesaid the said decree of April 13, 1878, is wholly reversed with costs to the appellant against the appellee, W. S. Dils, and this cause is remanded to the circuit court with directions to that court to order a new account of the transactions between the parties and for further proceedings there to be had in the cause according to the principles announced in this opinion.

REVERSED.    REMANDED.