## WHEELING.

### LOGIE *v.* BLACK.

Submitted September 8, 1883—Decided April 5, 1884

1. The following agreement was entered into between L. and B. and reduced to writing: "It is hereby agreed between L. and B., that upon all claims against the United States procured by the former for the latter L. is to have *twenty per cent.* not to be paid to him by said B. as fast as said claims are audited and paid by the proper authorities at Washington. This agreement is to stand in place of any heretofore made and to apply to all claims heretofore secured as well as to any which may be secured in future. The condition of the above contract is that said B. is to receive *fifty per cent.* for prosecuting and collecting said claims. And on claims, upon which less than *fifty per cent.* is received by said B., L. is to receive in same proportion or *pro rata.*" HELD:

That this agreement clearly created no partnership between L. and B. but simply provided what compensation B. should pay to L. for having such claims put into the hands of B. for collection ; and under it L. could bring an action of *assumpsit* against B. for his compensation for procuring

---

*The other opinions announced at this term are printed in vol. xxiii.

any claim to be placed in B.'s hands for collection as soon as it was collected and received by B. (p. 18.)

2. In such an action brought by L. against B. the defendant had no right as a defence to *recoup* the damages he may have sustained, because L. without just cause had, after he had procured a party to put such a claim in B.'s hands for collection, and after he B. had spent labor and money in its prosecution, induced the party, who owned the claim, to revoke the authority of B. to collect the same. (p. 19.)

3. If the basis of the plaintiff's action is the breach by the defendant of a contract, the defendant may *recoup* any damages, which he may have sustained from a breach of any obligation imposed on the defendant by such contract, whether this obligation be in the same writing with the contract sued on, or whether it be an implied contract on the part of the defendant or be in another writing or be a parol contract on the part of the defendant, provided always it constitutes a part and parcel of one and the same transaction. (p. 19.)

4. If a case has been continued once or more by a circuit court on the motion of the defendant, and the court refuses to continue the case again on his motion, though he has complied apparently with the general rules giving a party a claim to a continuance, the Appellate Court will not reverse a judgment because of such refusal to continue the case, unless it be made very apparent, that injustice has been done to the defendant; and if after such refusal to grant such continuance leave is given to take the deposition of the absent witness, on account of whose absence the application for continuance was made and the court fixes a later day of the term for the trial of the case, and the deposition of the absent witness is taken and read to the jury, this Court will not reverse a judgment because of the refusal to grant such continuance. (p. 21.)

GREEN, JUDGE, furnishes the following statement of the case:

On August 30, 1878, James Logie brought an action of *assumpsit* in the circuit court of Jefferson county against G. W. Z. Black. The following is his declaration filed at the September rules, 187–:

"JEFFERSON COUNTY, TO-WIT:

"IN THE CIRCUIT COURT OF SAID COUNTY, }
"September Rules, 1878.                         }

"James Logie complains of G. W. Z. Black, who has been summoned, &c., of a plea of trespass on the case on promises, for that, whereas, the defendant, on the —— day of August,

1878, was indebted to the plaintiff in one thousand dollars for the price of goods sold and delivered by the plaintiff to the defendant at his request; also one thousand dollars for the price and value of work and materials done and provided by the plaintiff for the defendant at his request; also in one thousand dollars for money lent by the plaintiff to the defendant at his request; also in one thousand dollars for money paid by the plaintiff for use of the defendant at his request; also in one thousand dollars for money received by the defendant for the use of the plaintiff; also in one thousand dollars for money found to be due from the defendant to the plaintiff on an account stated between them; and whereas, the defendant afterwards, on said day and year, in consideration of the premises, respectively, promised to pay said several sums of money, respectively, to the plaintiff on request, yet he hath disregarded said promises, and hath not paid any of said moneys, or any part of them, to the plaintiff's damage one thousand five hundred dollars, and thereupon suit is brought.

"WHITE AND TRAPNELL, <i>P. Q.</i>"

With this declaration was filed the following bill of particulars:

BILL OF PARTICULARS.

"G. W. Z. BLACK,

|  |  | |  |  |
|---|---|---|---|---|
| | "*To James Logie,* | | DR. | |
| 1876. | | | | |
| | To cash, 2-5 of coms. collected on claim due Jno. W. Hill, $217............ ............ $ | | 26 | 04 |
| July—, | —To cash, share of commissions on claim due John Welcome, $275.................... | | 27 | 50 |
| 1878. | | | DR. | |
| Aug.—, | —To cash, claim due James W. Snyder, $1,610.............................................. | | 161 | 00 |
| " | To cash, claim due Jno. M. Coyle, admr., $460........................................... | | 46 | 00 |
| " | To cash, claim due L. J. Osbourn, ex'or, $425................................................... | | 51 | 00 |
| " | To cash, claim due A. J. Johnson, $50.00 | | 5 | 00 |
| " | To cash, claim due Randolph Custer, $1,246.............................................. | | 150 | 72 |
| " | To cash, claim due N. S. Shaull, $460...... | | 55 | 20 |
| " | To cash, claim due Wm. Green, $900........ | | 108 | 00 |
| " | To cash, claim due F. A. Fulk, $682 ........ | | 122 | 76 |

"$753 22"

With this bill of particulars as explanatory thereof was filed a copy of an agreement as follows:

" It is hereby agreed between Dr. James Logie and G. W. Z. Black, that upon all claims against the U. S. procured by former for latter, Dr. Logie is to have twenty per cent. net, to be paid to him by said Black as fast as said claims are audited and paid by proper authorities at Washington. This agreement to stand in place of any heretofore made, and to apply to all claims heretofore secured, as well as any that may be secured in the future.

" The condition of the above contract is, that said Black is to receive fifty per cent. for prosecuting and collecting said claims. And on claims upon which less than fifty per cent. is received by said Black, Dr. Logie is to receive in same proportion or *pro rata.*                            •

" JAMES LOGIE.

" *Frederick, October* 12, 1871.        " G. W. Z. BLACK."

On November 21, 1881, the court permitted the defendant to withdraw a special plea, which had been filed, and in lieu thereof to file an amended special plea, the filing of the original and amended special plea being objected to by the plaintiff; and when the amended special plea was filed the plaintiff demurred to it, and the court overruled his demurrer. This amended special plea was as follows:

" The defendant says that after entering into the agreement set out in the words and figures following (see p. 4 of this record) the said parties thereto went on, and in fulfilment of the same said Logie produced sundry claims which were to be prosecuted under said agreement by said Black upon the terms set out in said contract, and among those claims so obtained by said Logie and placed in the hands of said Black for collection, were the following: The claim of Thomas Wysong; the claim of Philip Moles; the claim of George W. Cockrell; the claim of George H. Beckwith, and the claim of Joseph Welshams; all of which were sevally good and valid claims against the government of the United States, and after the said Black had performed work and labor toward the collection of said claims, and incurred expense about the same, the said Logie, in violation of said agreement and in violation of his duty in that behalf, procured

said above named claimants to revoke the agency and power and authority of said Black to attend to and prosecute and collect the same, and procured said claimants to employ new and other attorney or attorneys in that behalf, who were to prosecute and collect said claims yielding to said Logie a compensation for the procurement of the same, whereby and by reason of said breach of faith and violation of his contract by said Logie, the defendant says that he was injured to the full extent of the claim now asserted in this suit by the plaintiff in his bill of particulars. Whereupon the defendant says that he ought to *recoup* against the plaintiff the full amount of said injury and damage, and that plaintiff ought not to recover anything in this suit of or against the said defendant; and this he is ready to verify.

　　　　　　　　　　　　　　　"Lucas, *P. Q.*"

To which plea the plaintiff replied generally; and issue was joined on February 21, 1882. The court had continued the cause on the motion of the defendant and at his costs, because his witnesses had not been summoned, the papers being absent and in their absence the clerk having issued no summons for any of them. The defendant at the February term, 1882, demurred to the declaration; and the court overruled his demurrer. He then moved to strike out the bill of particulars filed with the declaration; but the court refused his motion. He then moved the court to change the venue to Berkeley county which the court refused to do. He then moved to continue the cause which the court refused to do. A jury was then sworn to try the issue joined. On the next day the defendant's counsel moved to lay over the further trial of the cause on account of the illness of the defendant; and the court adjourned the jury till the Monday following, that the defendant's deposition might be taken *de bene esse*. His deposition was accordingly taken; and the jury again met on February 27, 1882, to which day the trial had been adjourned; and the case was tried before the jury, who on March 1, 1882, found for the plaintiff on the issue joined and assessed his damages at six hundred and seventy-two dollars and eighty-six cents. A motion was made by the defendant for a new trial, which the court overruled; and on March 10, 1882, entered up a judgment for the plaintiff against the

defendant for six hundred and seventy-two dollars and eighty-six cents with interest from March 1, 1882, till paid and his costs.

Nine bills of exceptions were taken by the defendant's counsel during the progress of the case. They are numbered from one to ten, but were only nine in number, the one which had been marked No. 2 not having been signed and therefore constituting no part of the record. The first bill of exceptions was to a refusal of the court to continue the case on the motion of the defendant's counsel, on the ground that the defendant was sick in bed at Harper's Ferry, and that he was a witness, and that they could not safely go to trial without him. To support this motion the defendant's counsel produced a certificate from Black's physician that he was sick in bed and too unwell to rise that day; and a letter from an attorney at Harper's Ferry saying Black was sick in bed the evening before and was still sick in bed having a physician to attend him; also a telegraphic dispatch from Black to his counsel stating he was sick in bed. The affidavit of this physician was taken by telegraph the mode of doing which will appear from the following certificate of the notary public:

" STATE OF WEST VIRGINIA, JEFFERSON COUNTY, TO-WIT:

"I, Cleon Moore, a notary public in and for the said State, hereby certify that I went to the office of the B. & O. R. R. Co., in Charlestown, in said county, on the 21st day of February, 1882; that a telegram was sent to Harper's Ferry, in said county, from the office aforesaid, or given the operator for that purpose, requesting Dr. B. B. Ranson to come to the telegraph office at Harper's Ferry; that a message came back to this effect: 'Dr. B. B. Ranson has come to said office.' A telegram was then sent to B. B. Ranson in these words: 'Hold up your hand.' Signed, 'Cleon Moore, notary public.' Answer was returned to the effect that Ranson was holding up his hand, and I sent the following telegram: 'Do you swear that Black is too sick to attend court?' and the answer delivered to me by the operator was 'I do.' Signed 'Ranson.'

"Given under my hand this 21st day of February, 1882.

"CLEON MOORE, *Notary Public.*"

The telegraph operator was examined in court and testified to the mode used in taking the physician's affidavit as stated in above certificate.   It was then three o'clock P. M. and the defendant's counsel moved to lay the case over till the next day but the court overruled his motion, the case having been previously continued at two terms of the court on the defendant's motion.

The third bill of exceptions was to the refusal of the court to set aside the verdict and grant a new trial to the defendant, because the jury had failed to allow him any damages on his special plea of *recoupment.*   This claim for a new trial was based on the fact, that the jury, when they returned into court, brought with them and handed to the clerk a memorandum showing the amount allowed to the plaintiff on each claim named in the bill of particulars, aggregating six hundred and seventy-two dollars and eighty-six cents, which was the verdict of the jury, when put in form by the court, and that on the further fact it appeared that no abatement had been made on account of the defendant's claim to *recoupment.*   This bill of exceptions sets out the evidence given by the defendant Black in his deposition, which by his statement would show he had sustained considerable damages because of the matters set out in his plea of recoupment.   But there was no other evidence stated to corroborate his statement except the simple statement of counsel, that it would be corroborated, if certain witnesses were present.

The fourth bill of exceptions was as follows:

### BILL OF EXCEPTIONS NO. 4.

"Be it remembered that in this case, there being evidence tending to support the hypothesis of the instruction, the defendant moved the court to instruct the jury as follows:

"The court instructs that should they find that the parties named in defendant's special plea, or any of them, had employed the defendant under the agreement of October 12th, 1871, and had subsequently revoked his powers and agency under the inducements of the plaintiff as set out in said plea, then the defendant is entitled to *recoup* such damages, if any, as they may find he suffered by reason of such revocation, notwithstanding that he may subsequently have made a new

contract or contracts with such claimant or claimants, and have recovered something upon said claim or claims under such new contracts.

"But the court refused, having already granted the following instruction:

"The court instructs the jury that if they should believe the plaintiff was acting under the written agreement of the 12th of October, 1871, between them to secure claims against the United States to be prosecuted before the departments at Washington, and that the plaintiff did, in accordance with said agreement, procure claims and send them to defendant to prosecute and perfect, and the defendant did, in accordance with the agreement, give his labor, skill and money for the purpose aforesaid, and further find that whilst the defendant was thus engaged in the prosecution of said claims under his said agreement, the plaintiff did procure the claimants named in defendant's special plea to revoke the power and authority of said Black to prosecute and collect the same, and did cause to be taken from the control of the defendant said claims or any of them, which he had been empowered to prosecute and collect, and shall further find a loss to the defendant by reason of said conduct of the plaintiff, of commissions, then they are at liberty to estimate such losses thus caused by the acts of the plaintiff, and to consider what damage, if any, the defendant sustained thereby."

The fifth bill of exceptions was to the permitting by the court of various agreements with the parties named in the bill of particulars filed with the declaration to go to the jury. Of these numerous contracts this is a specimen:

"APRIL 24TH, 1872.

"Having employed G. W. Z. Black, of Frederick, Maryland, as my attorney to prosecute my claim against the United States for property taken during the war, I hereby promise and agree to pay thirty-five (35) per cent. out of all amounts collected—twenty-three (23) per cent. of which is to go to the said G. W. Z. Black and twelve (12) per cent. to James Logie.

"JAMES W. SNYDER.

"Witness—A. J. JOHNSON."

"As each of these several agreements was offered the defend-

ant moved its exclusion generally; but the court overruled the several motions; and the said agreements were admitted in evidence upon the condition that the plaintiff proved that the claims mentioned in the said agreements were procured by the plaintiff for the defendant under the contract of October 12, 1871, and the said plaintiff thereupon introduced testimony tending to show that the said claims were thus procured by the plaintiff, and that the said contracts with the said claimants remained in the hands of the said plaintiff without objection of the said defendant; and the defendant excepted, and the court now signs and seals as a part of the record this his fifth bill of exceptions.

"CHAS. J. FAULKNER, JR.   [SEAL.]"

The sixth bill of exception is as follows:

BILL OF EXCEPTIONS NO. 6.

"Be it remembered that in this case the plaintiff gave in evidence several agreements mentioned and set forth in the defendant's fifth bill of exceptions; and there was also given in evidence, without exception, the following letter:

"KEAREYSVILLE, August 30, 1875.

" *Col. G. W. Z. Black.*

"DEAR SIR.—Notice is hereby given you that the partnership existing between us pursuant to the agreement of June 6, 1873, from and after this date is at an end as to the procurement of new business, and also that the effect of any and all other agreements between us concerning similar matters is hereby suspended. As to claims already procured and in course of prosecution, I propose that they be prosecuted to a settlement by us with the same vigor as if this partnership were still in existence. Hoping my views, as above expressed, may meet with your concurrence and approval,

"Yours truly,
"JAMES LOGIE.

"Thereupon the defendant moved the court to instruct the jury as follows: "Should the jury find from the evidence that the relation of the parties under the agreement or memorandum of October 12, 1871, as interpreted by their contemporaneous correspondence and acts and subsequent cor-

respondence and conduct, was a partnership, they will find for the defendant, but the court refused. Whereupon the defendant excepted, and the court signs and seals as a part of the record this sixth bill of exceptions.

"CHAS. J. FAULKNER, JR. [SEAL.]"

The seventh bill of exceptions was to the excluding by the court from the jury of certain portions of the deposition of defendant, Black, which is set out at length in the bill of exceptions.

The eighth bill of exceptions is as follows:

### BILL OF EXCEPTIONS NO. 8.

"Be it remembered that in this case the defendant proved the facts which are proved by the deposition of G. W. Z. Black, as set out in defendant's seventh bill of exceptions; also the letter of Logie of August 30, 1875. Whereupon the court, on defendant's motion, instructed the jury as follows: (For instruction see page 23 of this record.) And thereupon the defendant prayed the court to give the following instructions:

### "INSTRUCTION NO. 5.

"The court instructs the jury that if they shall find that the plaintiff was the agent of the defendant to procure claims against the United States for collection, and did so procure them as agent, and shall further find that the defendant by reason and in consequence of the plaintiff's misconduct, if any, as set out in defendant's special plea, lost money or incurred expense, the plaintiff is responsible to the defendant and is bound to reimburse the defendant.

### "INSTRUCTION NO. 6.

"If the jury shall believe the plaintiff was the agent of defendant and shall find that the plaintiff by such misconduct as is alleged in the special plea caused a loss or damage to the defendant, the plaintiff is responsible therefor and bound to make full indemnity.

### "INSTRUCTION NO. 9.

"The court instructs the jury that under the declaration in

this case, the plaintiff cannot recover any claim against the defendant arising for a breach of the special agreement introduced in evidence by the plaintiff of date the 12th of October, 1871.

### "INSTRUCTION NO. 10.

"That in making up their verdict, the jury are bound to inquire and consider what damage, if any, the defendant sustained by reason of any such dereliction or misconduct on the part of the plaintiff as is described in the defendant's special plea; but the court refused, and the defendant excepted, and the court now signs, seals and enrolls this his eighth bill of exceptions as part of the record.

"CHAS. J. FAULKNER, JR.   [SEAL.]"

Bill of exceptions No. 9 was as follows:

"Be it remembered that in this, the plaintiff having introduced evidence tending to support the several hypothesis contained in the following instructions:

### "PLAINTIFF'S INSTRUCTION NO. 1.

"If the jury believe from the evidence that the contracts in evidence in the cause between G. W. Z. Black, the defendant, on the one part, and John W. Hill, John Welcome, James W. Snyder, A. J. Johnson, Randolph Custer, N. J. Shaull, Wm. Green and F. A. Fulk, on the other part, respectively, were made for the prosecution of claims procured by the plaintiff for the defendant, under the contract between the plaintiff and the defendant entered into October 12, 1871, also in evidence in the cause; and that the said claims were prosecuted, audited and paid by the proper authorities, and the commissions collected by the said defendant in execution of the said contracts, then the plaintiff is entitled to recover on the sum so audited and paid the amount of compensation stipulated to be paid to the plaintiff in the contract of October 12, 1871, which amount is two fifths of the sum which this jury may find from the evidence was received as compensation by the defendant on any or all the claims aforesaid, unless the jury shall find from the evidence that subsequent to the date of the contract of October 12, 1871, the plaintiff and defendant mutually agreed to modify or change the

amount of compensation as fixed by said agreement, in which event the amount of compensation to be paid by the defendant to the plaintiff will be governed by the subsequent agreement so far as the same was agreed by the plaintiff and defendant to apply to any or all of the claims mentioned in in the bill of particulars.

## "PLAINTIFF'S INSTRUCTION NO. 2.

"If the jury believe from the evidence that the claims upon which compensation is sought to be recovered in this action, were procured for the defendant by the plaintiff under the contract between the plaintiff and defendant, and the defendant and claimants, which are in evidence in the cause, then the plaintiff is entitled to recover his proper compensation upon the amounts so recovered by the defendant upon such items of account as were placed in the hands of the defendant by the plaintiff as aforesaid, even although they shall further find from the evidence that after such procurement there were other items added to the said claims through the efforts or by the influence of persons other than the plaintiff.

## "PLAINTIFF'S INSTRUCTION NO. 3.

"The court instructs the jury that the defendant, to sustain his plea of recoupment, must prove—1. That the claims mentioned in said plea were procured by Logie for the defendant under the contract of October 12, 1871. 2. That Logie, in violation of said contract, procured the claimants named in said plea to revoke the powers and agency of the defendant to prosecute and collect said claims. 3. That said powers and agency were in fact revoked and annulled; and 4. That the defendant suffered loss or damage in consequence in the prosecution and collection of the claims mentioned in said plea.

"But they are further instructed that they are at liberty to consider the admission of the facts set out as to the claims of George W. Cockrell and Thomas Wysong as sufficient evidence of the facts stated in such admission so far as the same sustain the allegations of defendant's special plea.

## "PLAINTIFF'S INSTRUCTION NO. 5.

"The court instructs the jury that if they believe from the evidence that there was a power of attorney executed to other parties by N. S. Shaull anterior to that given by said Shaull to G. W. Z. Black, the latter power revoked the former, and the amount of the compensation to Logie under the contract between him and Black of October 12, 1871, if they find from the evidence that the claim of Shaull was placed in Black's hands by Logie under the terms of said contract, is not to be diminished in this case by any sum paid by the said Black to the first attorney for the prosecution of the said claim unless they further find from the evidence that the department in Washington recognized a superior right in Lloyd to collect the claim, and that he actually received a commission and the draft for said sum from the department as the *attorney for Shaull,* then the plaintiff is entitled only to recover his just proportion of compensation upon the amount collected by the defendant and not on the amount allowed by the United States government.

## " PLAINTIFF'S INSTRUCTION NO. 6.

"If the jury believe from the evidence that in the cases of George W. Cockrell and Thomas Wysong, or either of them there was a procurement of these claims, or either of them, by Logie under the contract of October 12, 1871, or a final prosecution of them, or either of them, by Black to a successful conclusion under a new contract between Black and the said claimants, then the defendant, under the pleadings in this cause, is not entitled to recover for any loss occasioned by the prosecution under the said renewed contract.

"And the defendant, having introduced the evidence contained in the deposition of G. W. Z. Black, as set out in exception No. 7. and Logie's letter of August 30, 1875, as set out in former bills of exceptions, objected to the instructions heretofore set out in this bill of exceptions; but the court overruled the objection, and signed and sealed this the defendant's ninth bill of exceptions as part of the record.

"CHAS. J. FAULKNER, JR.  [SEAL.]"

And bill of exceptions No. 10 was as follows:

"BILL OF EXCEPTIONS NO. 10.

"Be it remembered that in this case, on the trial, the defendant propounded to James Logie, the plaintiff, while testifying in his own behalf, the following interrogatory: 'Did you suffer any loss upon any claims procured by you under your contract with Black and not allowed?' Also the following interrogatory: 'Did defendant Black suffer any loss upon any claims so procured by you and not allowed?'

"But the court, of its own motion, ruled out said interrogatories upon the ground that the same or similar questions had been asked and objected to by the plaintiff, and on such objection ruled out; and also upon the ground that there had been nothing in the examination-in-chief upon which to base such interrogatories; and the same questions were asked as to expenses incurred severally by plaintiff and defendant, and ruled out in the same manner and for the same reasons, and refused to permit the witness to answer the same, so that such answers can not be herein certified; and the defendant excepted to said rulings, and the court signed and sealed this his tenth bill of exceptions as part of the record.

           "CHAS. J. FAULKNER, JR.    [SEAL.]"

To the judgment of the circuit court rendered March 10, 1882, the defendant, G. W. Z. Black, has obtained a writ of error and *supersedeas*.

*Daniel B. Lucas* for plaintiff in error.

*White & Trapnell* and *W. H. Travers* for defendant in error.

GREEN, JUDGE:

The general character of this case as gathered from the numerous bills of exceptions, which set out merely what the evidence tended to prove, not what was proven, or even all that the evidence tended to prove, is, that on October 12, 1881, the plaintiff and defendant executed the paper, which accompanied the bill of particulars filed with the declaration, which was in *assumpsit* and contained nothing but the common counts. By this contract Black agreed to pay to Logie

on each several claim against the United States, which he procured any person to put in the hands of Black as a claim agent to collect two fifths of the *net* amount, which by the contract, which Logie made with these several parties, Black should receive as compensation for the amount collected from the United States authorities on such claims, the payment on each claim to be made to Logie as soon as the claim was collected by Black from the government. The same *per cent.* was to be paid to Logie in like manner on all claims, which before that time he had procured and put in the hands of Black for collection. Logie was to make the several contracts with different parties, whereby they employed Black as their attorney to collect their several claims, and he was to contract with them for such a *per cent.* as he could get the parties to agree to pay to Black. During the years 1872 and 1873 Logie made several contracts of this character with several parties. He made contracts during those years with James H. Snyder, John Welcome, Randolph Custer, N. S. Shaull and William Green, who severally agreed to pay to Black as their attorney thirty-five per cent. of the amount collected, and in each of their agreements a provision was inserted that of this thirty-five per cent. to be paid to Black Logie was to receive twelve per cent. and Black twenty-three. Logie's compensation was thus a little less than two fifths of the amount Black would receive as his compensation on these claims, and there was evidence tending to show that this change in the amount to be received by Black and Logie respectively was made with their mutual approval.

In 1872 Logie made a contract with John W. Hill and one with A. J. Johnson, who severally agreed to pay to Black as their attorney thirty and twenty-five per cent. respectively on the amount collected on their several claims against the United States government. The amount, which Logie was to get on these contracts, was two fifths of the net amount of compensation to be paid to Black. These contracts are all set out in bill of exceptions No. 5. In the bill of particulars filed with the declaration Logie claims his share of the commissions received by Black on these and also on several other claims.

Black in his special plea of *recoupment* states that among

the claims so placed in his hands for collection were claims of Thomas Wysong, Philip Moler, George W. Cockrell, George A. Beckwith and John Welshams, none of which are named in the bill of particulars filed with the declaration, and all of which, this plea says, were good claims against the United States government and that after he had incurred expenses and performed labor in attempting the collection of these several claims, Logie procured these parties severally to revoke the agency and authority of Black to collect them and procured from these parties authority for other persons to collect them, they giving to Logie a compensation for so doing. Black claims to *recoup* the whole amount of the damages he thereby sustained, which, this plea says, is equal to the plaintiff's entire claim. The only evidence in the record to support any of the allegations in this plea is the evidence of Black, except a statement made at the trial, that if two of these persons, who had put claims in the hands of Black through Logie's procurement had been present at the trial, they would with reference to their claims have supported the allegations in this plea of recoupment. He states among other things that his original contract with George W. Cockrell was for fifty per cent. of the amount of the claim he might collect. But after it was revoked, he made a new contract with him for thirty-five per cent. and collected the claim under this contract losing thereby, he says, one hundred and forty dollars, about fifteen per cent. of the amount collected. He states, that on the claim of Beckwith he had got the quartermaster's agent to recommend the allowance of one thousand eight hundred dollars or one thousand nine hundred dollars, when a revocation of his power of attorney in Logie's handwriting was filed, which greatly embarrassed him, Black, and so interfered with the prosecution of the claim as to prevent favorable action upon it. What he got upon it, or whether he ever got anything, does not appear. He estimates his loss on account of this interference at six or seven hundred dollars. Wysong's claim, he thinks, was good, but it was not prosecuted because of this revocation of authority, when the evidence could have been procured. He estimates roughly his loss on this account as three hundred dollars or

four hundred dollars. He says he lost by the revocation of Philip Moler's power of attorney one hundred dollars. The record does not show that it was ever collected. He estimates his loss because of the revocation of Joseph Welshams' power of attorney at seventy-five dollars. All these statements were excepted to because there was no evidence to show that the power of attorney to him in any of these cases was revoked. And as to the damages stated they were mere opinions of Black, and the facts, on which they were based, were not stated. He states that it is a matter of controversy whether these powers of attorney are to be regarded by the department at Washington as revocable or not, the department ruling differently at different times. It being sometimes held that such a power of attorney cannot be revoked without cause.

With reference to the claims stated in the bill of particulars he says, he agreed verbally with Snyder, that, as Logie was disbarred from practicing before the departments in Washington because of misconduct, he would charge him but twenty-five *per cent.* on his claim instead of thirty-five *per cent.* He says with reference to Nicholas S. Shaull's claim, it was collected and an order given by the department to pay to Nicholas S. Shaull's order, and this draft was handed to him by one Lloyd, a former attorney of Shaull's to collect this claim. A considerable portion of this deposition was stricken out as not proper to go to the jury, as set out in bill of exceptions No. 7. I need not state it in detail. It covered his statements about costs he had paid; his statement that he had agreed with Snyder to reduce his charge of collection to twenty-five per cent; his statement that he had paid three hundred and fifty-two dollars in taking depositions in Custer's claim. He had stated with reference to the Shaull claim, that he and Loyd were both agents and both got it allowed in different departments; but it could only be paid once, and he discovered that Lloyd was entitled to the order. But Lloyd said, that as he, Black, had had some trouble about the matter and could see Shaull early, he would give the draft to him, if he would pay him some forty-two dollars and fifty cents or sixty-two dollars and fifty cents, he did not remember which. The reasons thus given why Lloyd passed

over this order to Black were stricken out by the court. His statements about his losses by the revocation of the orders of Moler, Beckwith and Welshams were all stricken out by the court. This was the basis of exception No. 7.

This statement of the general character of the case will enable us to comprehend the various instructions granted and refused by the court. But to enable us to determine whether there were any errors in the proceedings of the circuit court we must first consider what are the principles of law applicable in this case.

The most important question is: Were Logie and Black partners in these transactions? For if they were it is obvious that Logie could not bring against Black an action of *assumpsit*, this partnership, if there ever was one, not having been settled by the parties. The agreement between them of October 12, 1871, seems to me to be free from all ambiguity. By it Logie was to have two-fifths of the net compensation, which Black received, on each claim separately, as it was collected. Logie was not bound to procure claims for Black; but for whatever claims, he did procure for him, Black agreed to pay to him two-fifths of his net compensation. In ascertaining Black's net compensation on any claim the fees, which he had paid for depositions in that case, or any other expenses specially incurred in prosecuting that particular case would be deducted; but of course no allowance could be made for his general expenses as a claim-agent, but only his actual expenses proven in each case; and even these could not be allowed except under proper pleadings. No parol evidence of any sort should be allowed to explain the meaning of this contract, as it is free from all ambiguity. The several agreements made with different parties by Logie under this contract set out in bill of exceptions No. 5 were obviously proper to be received, as they were taken under this contract, and in some of them by a subsequent modification of the terms of this contract Logie's compensation was slightly reduced.

The letter of James Logie to G. W. Z. Black dated August 30, 1875, does not in any way affect the construction of the original contract of the parties dated October 12, 1871. For the agreement referred to in it as constituting a partnership

is one dated nearly two years afterwards, and which is nowhere set out in the record. This agreement of October 12, 1871, it seems to me, did not create any partnership. It merely fixes the compensation Logie was to receive for each claim which he had before that put into Black's hands for collection, and declared that the compensation Logie should get for all claims which he might thereafter, put into Black's hands for collection, should be the same. Here clearly was no community of profits between these parties for carrying on a legal business, which is necessary to constitute a partnership. For by a community of profits in a legal business is meant *a joint* and *mutual* interest in the profits of the business. See *Setzer* v. *Beale et als.*, 19 W. Va. 274. Here was no *joint* and *mutual* interest in the claim-business, but simply a separate and fixed amount to be paid to Logie by Black for each separate claim, which he procured and put into his hands as a claim-agent. And there is no reason why Logie under this contract might not have sued Black for his compensation on each separate claim so placed in Black's hands immediately on the collection of each separate claim.

The next enquiry is: Was this a case, in which Black could *recoup* against the demand of Loge under this contract any damages, which he might have sustained by Logie's having procured persons to revoke their powers of attorney and contracts with Black, when these powers of attorney had been procured for Black by Logie? An examination of the authorities in reference to when the plea of *recoupment* can be filed, or when *recoupment* may be relied upon as a defence, leads me to the conclusion, that, when the basis of the plaintiff's action is a contract, and his complaint is that there has been a breach of such contract by the defendant, then the defendant may if he chooses *recoup* any damages, which may have resulted to him by a breach of another portion of the same contract or of a contract made at the same time and constituting a part and parcel of the same transaction, whether contained all in one writing or in two separate writings, or one in a writing and the other parol, provided however they are all one transaction. See *Still* v. *Hall*, 20 Wend. 51; *Batterman* v. *Pierce*, 3 Hill 171; *Sawyer* v. *Wiswell*, 9 Allen 43; *McHardy* v. *Wadsworth*, 8 Mich. 350;

2 Parsons on Contracts 247, note to *Cutter* v. *Powell*, 2 Smith's Lead. Cas. 35; *Dermott* v. *Jones*, 2 Wal. 1; *B. & O. R. Co.* v. *Bitner*, 15 W. Va. 464.

The defendant cannot *recoup*, unless his damages to be *recouped* arise from some breach of contract by the plaintiff, which is in some such way, as we have pointed out, directly connected with the contract on which the action is based, and a part of the same transaction out of which the contract sued on arose. In the present case the defendant can have no such right to *recoup* as he claims. For by the contract of October 12, 1871, as I interpret it, Logie was placed under no obligations expressed or implied to Black. He neither expressly nor by implication agreed to procure claims for Black to prosecute. Had he done so, perhaps the procuring without any just cause of the revocation of Black's authority to prosecute these claims, if done by Logie, might be regarded as a breach of his agreement with Black to procure for him such claims. But he never did agree to procure claims for Black to prosecute or to do anything else. How then could his procuring of the revocations be regarded as a breach of any obligation expressed or implied imposed on Logie by the contracts of October 12, 1871? This being the case Black can not in this suit *recoup* these damages. It may or it may not be that he may have an action of *tort* against Logie for inducing Black's clients to revoke his authority to prosecute and collect their claims. It may have been done for instance by slandering Black, representing him to be unworthy of all confidence; and this might give him a right to sue Logie for damages; but he cannot *recoup* these damages in this action.

The only mode, in which Logie could know his compensation under this agreement of October 12, 1871, was by knowing the whole amount of the claim, which Black had collected. It is true that in a particular case Black might have spent money in paying for depositions taken, but in many cases no money would be so spent by him. He may or may not have been at expenses in the prosecution of a particular case distinct from his general personal expenses as claim-agent. Such expenses he had a right under the contract of October 12, 1871, to deduct from his gross compen-

sation in order to ascertain his net compensation, two fifths of which he agreed to pay over to the plaintiff. But, it seems to me, he could not take the defendant by surprise by undertaking to prove at the trial, that in a particular case he had paid for depositions or had been at other expense, which it was legitimate to subtract, before his net compensation could be ascertained. If he designed to do so he should have given notice to the plaintiff by filing a detailed account of all such moneys paid in taking depositions in each particular case or in other legitimate expenses which he had incurred in prosecuting each claim named in the bill of particulars, so as to afford the plaintiff a reasonable opportunity to enquire into their accuracy, and, if deemed necessary, to summon witnesses to testify on the subject. It would have been a bill of off-sets, in which the plaintiff should have been charged with two fifth of these expenses; and in this list should have been included the forty-two dollars and fifty cents or sixty-two dollars and fifty cents, which, the defendant testifies, he paid to Lloyd before he could collect Shaull's claim; for it, as the defendant claims, like other necessary expenses had to be paid and abated from his compensation, before his net compensation could be ascertained. The effect of the agreement of October 12, 1871, was to require Logie to pay two fifths of these expenses and deductions, when he came to demand his compensation, when each several claim was collected by the defendant. And he should have been notified of this claim against him by the defendant in each several case by filing such a bill of off-sets. Failing to file any bill of off-sets he could at the trial prove no such expenses or deductions.

With reference to the continuance of cases by the circuit court, it may be regarded as settled law in Virginia and in this State, that where a party has obtained one or more continuances at prior terms of the court, and the court in the exercise of its discretion refuses to again continue his case, even when he has brought himself apparently within the general rule, which ordinarily entitles a party to a continuance, the appellate court will not reverse such case because of the refusal of the circuit court to grant such continuance, unless the party complaining makes out a very strong case,

and the appellate court sees, that the party has suffered from an abuse by the circuit court of its legal discretion. Some appellate courts have gone farther than ours and have held, that they would not review the exercise of such discretion by the inferior court, whose opportunities of exercising its discretion in such case must greatly exceed that of the appellate court. We have however determined that the exercise of such discretion is reviewable; but under such circumstances the leaning of the Court will be strong to support the action of the circuit court.

In *Brooks* v. *Calloway,* 12 Leigh 474, Allen, Judge, delivering the opinion of the court says: "With respect to the motion for a continuance, if the question were open, I should be of opinion, that when the law does not give the *right* to continue, as in cases of revivor against a personal representative, but the application is to the discretion of the court, an appellate court ought not to look into the question whether this discretion was properly exercised. The court below sees the party, hears his statement, and has an opportunity of forming a correct opinion in regard to his motives; the party who applies is a witness in his own behalf. The application being addressed to the court, it must decide upon the credit to be given to his statements. Men of loose moral character are not restrained in such cases from making affidavits through fear of punishment. The facts so far as open to examination may be true; the witness may have been summoned, and be absent, without default of the party, and he will say he believes him to be material; but there is no means of ascertaining whether that belief is well or ill founded. It seems to me the supreme court in *Woods, &c.,* v. *Young,* 4 Cranch. 237, laid down the correct rule. The rule however has been settled otherwise in Virginia. But I am not disposed to extend it further. * * . * *Milstead* v. *Redman,* 3 Munf. 219, was a much stronger case for a continuance. There the defendant obtained a continuance at November; at March there was a verdict for the plaintiff and a new trial; at May the cause was continued for the defendant; and at August term he again moved for a continuance, because of the absence of two material witnesses, who acknowledge service of the *subpœna* and the husband of one of them stated

she was too ill to attend the court. The motion to continue was overruled and this judgment was affirmed."

When the court as in this case refuses a continuance to the defendant, who has obtained two continuances before, but by adjourning the trial of the case affords his counsel an opportunity to take the deposition of the absent witness to be read at the trial, it would seem to be entirely clear that the appellate court would not reverse the judgment because a continuance was not granted. The circuit court in such case has shown an anxious desire to do the defendant justice and has granted him every indulgence consistent with a regard to the plaintiff's rights. It no doubt in its anxiety not to injure the defendant subjected other suitors to inconvenience by thus adjourning the case over to a future day for trial; for in so doing it must have deranged the docket to the prejudice of others. No one has a right to demand the court in any case so to act; and if the court refuses to do so, this Court will assume, that it had sufficient reason, and will not even review its action. See *Brooks* v. *Calloway*, 12 Leigh pp. 474, 475.

The presence of a party to a suit to aid and assist his counsel in the trial is not ordinarily considered essential; and very many cases are tried in the absence of the parties. And the absence of the party not as a witness but simply as a party to aid his counsel in the trial of a case would but rarely be regarded as a ground for a continuance, especially when there had already been one or more continuances. Certainly it would not in any case be regarded as good ground for a continuance, though he was necessarily absent, unless there was satisfactory evidence, that in that particular case it was a matter of great importance to his interest, that the case should not be tried in his absence. The case of *McAlexander* v. *Hairston's Ex'or*, 10 Leigh 488, shows only that when there are strong reasons, why a case should be continued, some weight would be attached to the fact, that the party asking a continuance had been prevented by severe illness from making preparation for the trial.

We will now apply these principles of law to the case before us.

The first bill of exceptions is to the refusal of the court to

continue the case. Assuming for the sake of argument that the affidavit of Ranson the physician of the defendant, that he was too sick to attend the court, obtained by telegraph the notary administering the oath being in Charlestown, while the affiant was in Harper's Ferry, still the defendant can not on the principles we have laid down complain before this Court, that his case was not continued, as the record shows, that at the two preceding terms the case had been continued for him, and the record also further shows that before the case was actually tried its trial was postponed to give to the counsel for the defendant an opportunity to take his deposition *de bene esse*, and it was taken and read to the jury at the trial of the case. As to the supposed necessity of his being personally present to aid his counsel in the progress of the trial it is sufficient to say, that no continuance of the case was asked on that account, and there is no proof, that his counsel either needed or desired his personal presence in order to assist him during the progress of the trial.

The fourth bill of exceptions is that the court refused to give an instruction, that in such a case, as we have stated, the defendant was entitled to *recoup* notwithstanding he had made a new contract with the claimant or claimants and recovered something on said claim or claims. The court refused to grant the instruction as drawn by defendant's counsel because of its having previously given an instruction, that the defendant was entitled to *recoup* under such circumstances, as there was evidence tending to establish in this case. The defendant objected principally, because the *proviso* in his instruction was omitted in the instruction given by the court. We have stated that the court below ought not to have permitted the plea of *recoupment* to be filed in this case, and that in this case the defendant had no right to *recoup* any of his damages, if he had sustained any, by the plaintiff improperly procuring a revocation of his authority to collect certain claims, which had been put in his hands by the plaintiff under the agreement of Oct. 12, 1871. Of course therefore the defendant cannot complain that his instruction contained in this fourth bill of exceptions was not granted. The only error committed by the court was in granting the instruction mentioned in the fourth bill of ex-

ceptions; but this was an error, according to the views we have expressed, in favor of the defendant, and of which he can not complain.

The fifth bill of exceptions was to the admission of the various contracts made by Logie with different parties, whereby they agreed to employ the defendant, Black, as their attorney severally to prosecute their claims against the United States, and whereby they agreed to give him a certain *per cent.* of the amount recovered, there being evidence tending to show that the plaintiff had obtained these contracts, and that they remained in his hands without objection by the defendant, and that they were procured under the contract of October 12, 1871. The parties to these contracts were some of those named in the bill of particulars filed with the declaration. The court obviously did right in permitting these contracts to go to the jury; as they tended directly to prove the plaintiff's demand, and were the best evidence that these claims had been put into Black's hands for collection, which was a fact not disputed, but they also showed the exact amount of the *per cent.* which Black was to receive for collecting these claims; and on this depended the amount which the plaintiff was entitled to demand of the defendant, if it was proven that these claims were collected by Black and the amount so collected.

The sixth bill of exceptions is to the refusal of the court to grant an instruction, that if the jury believe that the plaintiff and defendant were partners, they must find for the defendant. This would have been good law, if it had had any application to the case; but, as we have seen, the written contract of October 12, 1871, between the plaintiff and defendant clearly shows that they were not partners as a legal question; and there was no evidence in the case, so far as the record shows, showing that there was any contemporaneous correspondence or acts or subsequent correspondence and contract, which tended to show, that they were partners. And indeed there being no ambiguity in the original contract, such correspondence and acts could not be resorted to by the parties to interpret the contract. The court therefore properly refused to submit to the jury the question, whether there was or was not a partnership, as it would have done by

granting the instruction set out in the sixth bill of exceptions.

The seventh bill of exceptions was to the court striking out and not permitting to go to the jury certain portions of Black's deposition, hereinbefore described. They were not only properly stricken out on the ground of their impertinence in this case, but other portions of this deposition might properly have been stricken out. In fact nearly the whole of the deposition was taken to show either the amount, which the defendant claimed he had a right to *recoup*, because the plaintiff had procured the revocation of his authority to collect certain claims, and to show that he had taken great trouble and been at great expense in prosecuting both the claims, the collection of which was thus stopped and also those claims, his authority to collect which had not been involved. His statements were generally vague and indefinite but in one or two instances he specified amounts which he had expended in claims actually collected. Now we have seen he was not entitled in this case to *recoup* any damages which he had sustained, nor was he entitled to any allowance for his expenses. or other. deductions which affected his compensation, he having failed to file any bill of offsets. Nearly the whole of his deposition was therefore irrelevant; and the court might properly have struck out more of it than was stricken out.

Instructions 5, 6 and 10 contained in the eighth bill of exceptions were properly rejected by the court, as the defendant was not entitled to *recoup* in this case. The ninth instruction contained in this eighth bill of exceptions was properly rejected. · It asked the court to instruct the jury, that under the declaration in this case the plaintiff could not recover any claim against the defendant for breaking of his contract. No special count was necessary in order to recover on this contract, but a recovery could be had under the common courts, because nothing remained to be done under this contract except for the defendant to pay over the several amounts, which under this contract were due to the plaintiff.

The bill of particulars filed with the declaration specified each sum thus claimed to be due under this contract.

Of the plaintiff's instructions contained in bill of exceptions No. 9, instructions No. 12 and No. 2 were clearly proper to be given according to the views of the law we have expressed. The third instruction in reference to the defendant's right to *recoup* as well as the sixth instruction, ought not to have been given, but as the giving of them was beneficial rather than injurious to the defendant he can not complain in this Court. The fifth instruction ought not to have been given ; but in lieu thereof an instruction should have been given, that Black the defendant was not entitled to have abated any part of the money he paid to Lloyd the first attorney of Shaull as a means of procuring the draft in favor of Shaull. The propriety of giving this instruction in this form follows from the failure of Black to file the amount or rather two fifths of it as an off-set in this case. If he was not entitled to any abatement on account of any payment he had made to Lloyd, it must follow that this fifth instruction was erroneous, but that he could not possibly be prejudiced by its being given and can not complain of it in this Court. I will not consider whether this fifth instruction as given would or would not have been erroneous, had the defendant filed this bill of set-off, as it does not properly arise in the case.

The tenth bill of exceptions is to the refusal of the court on its own motion to permit the plaintiff to answer questions as to the losses he had sustained or that the defendant Black had sustained on claims not allowed by the United States government, and also as to the expenses they had each incurred in reference to such claims. It was according to the views we have expressed clearly right in not permitting such questions to be answered; for it is obvious that on the pleadings in this case no allowance could have been made to either plaintiff or defendant on account of such losses and expenses.

I have considered all the bills of exceptions in this case except the one marked No. 3. It sets out the evidence in reference to Thomas W. Wysong and George W. Cockrell, who it was admitted would, if present, testify, that their claims were obtained under the agreement of October 1, 1871, and placed in the hands of the defendant Black to collect, and after he performed work and labor in their col-

lection and incurred expenses about the same, the plaintiff Logie came to them and persuaded them to revoke the agency and authority of Black to collect these claims, and Black testified he lost thereby on Wysong's claim three hundred dollars or four hundred dollars roughly estimated and on Cockrell's claim one hundred and forty dollars; but while he says this, his own testimony seems to show that he lost nothing by the revocation of his power to collect this claim of Cockrell. The amount collected was nine hundred dollars or one thousand dollars he says. The first contract he says was for fifty per cent of the claim. This under the agreement of October 12, 1871, would entitle him to thirty per cent. Logie being entitled to the remaining twenty per cent. Black's thirty per cent would have amounted to from two hundred and seventy dollars to three hundred dollars. But he says after it was revoked by Logie's agency he made another contract with Cockrell to collect the same for thirty-five per cent.; and he seems to consider that he thus lost fifteen per cent. on this claim, that is from one hundred and forty dollars to one hundred and fifty dollars. But this does not seem to be the truth; for under his second contract of course he did not share his compensation with Logie and at thirty-five per cent. his compensation was from three hundred and fifteen dollars to three hundred and fifty dollars or from forty-five dollars to fifty dollars more than it would have been under the contract, which Logie caused to be rescinded. So that instead of losing one hundred and forty dollars on this contract by this recission he seems to have gained not less than forty dollars.

This bill of exceptions after setting out this evidence states, that the jury brought into the court, when they returned their verdict, a memorandum signed by the foreman giving the items, which they had allowed the plaintiff, and showing they had not allowed the defendant to *recoup* any damages. The court put this verdict in form: We the jury find for the plaintiff on the issue joined and assess his damages at one thousand six hundred and seventy-two dollars and eighty-six cents, which was the aggregate of the items allowed the plaintiff in the first memorandum of the verdict brought into the court. The defendant on this state of facts moved

the court to set aside the verdict and grant him a new trial, on the ground that the jury had failed to allow him any damages on his special plea of *recoupment;* but the court overruled the motion. We have said that the court ought not to have allowed this plea of *recoupment* to be filed, and if a new trial had been awarded ought to have stricken it out. I can not see therefore that the defendant was injured by this action of the court.

The counsel have argued the question, whether we can look at this memorandum of the jury to show that they allowed no damages to the defendant on his plea of *recoupment.* My impression is that we have no right to look at this paper, and if so, of course there is no ground for granting a new trial; but if we did look at it, we could not say that the jury erred in allowing no damages on this plea of *recoupment,* had it been proper to permit it to be filed. For absolutely the only evidence to show that the defendant had sustained any damages was his own evidence, which we have seen was very unsatisfactory as to Cockrell's claim, and from it the jury might well infer he had reaped an advantage by what is called in the plea of *recoupment* the plaintiff's misconduct. But we are entirely in the dark as to what extent the testimony of the defendant may have been impeached by evidence contradicting him on other points, on which he deposed, or his general character for veracity may, for anything the record shows, have been shown to be such as that he was totally unworthy of belief on oath. There are parts of his deposition in the record, which would seem to show that he, Black, was to say the least not very high-toned. Logie had been disbarred from practicing before the departments in Washington for his misconduct, and after that he, Black, agreed with Snyder that instead of charging him thirty-five per cent. for collecting his claim, he would collect for twenty-five per cent. which was two per cent. more than he would have got under the former contract made by Logie. But by this new arrangement Logie was to get nothing. This looks like very sharp practice on Logie by Black. And his excuse that Logie was disbarred from practicing before the departments in Washington seems to be no sort of an excuse for such conduct. For by the agreement of October 12, 1871, Black alone was to prosecute these claims before

the departments in Washington. If it be true that Logie did get certain parties to revoke the authority of Black to collect their claims, as I suppose he did, though he originally got them to put them into Black's hands for collection, yet who can say that he was not justified in so doing? His reasons for so doing does not appear in this record; but it does appear, that Black according to his own statement without any just cause was endeavoring to deprive Logie of his share of the compensation in one claim at least. If Logie returned this compliment in kind Black would seem to have little to complain of. This Court cannot say, that from the evidence before the jury not certified in this record the jury did not have a right to regard as wholly unreliable all that was said by Black in his deposition. As no other evidence was introduced to show, that he sustained any damage under his plea of *recoupment*, we cannot say they did wrong in allowing him no damages. But as we have said he had no right to put in such plea and no right to *recoup* any damages in this case.

Having reviewed all the questions named in this case my conclusion is, that there is no error in the proceedings to the prejudice of the defendant and that the judgment of the circuit court of Jefferson of March 10, 1882, must be affirmed; and the plaintiff in error must pay to the defendant in error his costs in this Court expended and damages according to law.

AFFIRMED.