## CHARLESTON.

FINK *v.* UNITED STATES COAL & COKE CO.

Submitted February 6, 1912.   Decided May 13, 1913.

1. ANIMALS—*Running at Large—Common Law—Unruly and Dangerous.*

    The common law, inhibiting the running at large of domestic animals, is not in force in this state, except as to such of them as are unruly and dangerous.  (p. 510).

2. SAME.

    Unruly and dangerous animals within the meaning of the law are such as are likely to injure other domestic animals and persons, not such as merely endanger real property by trespassing therein.  (p. 510).

3. SAME—*Trespassing—Right to Distrain.*

    No statute of general operation throughout this state confers right upon a land owner to sieze and hold domestic animals found trespassng on his land as a remedy for enforcement of payment of the damages done by them, unless they are estrays or the land is enclosed by a lawful fence and the animals have trespassed on the same a third time after notice in writing to the owner of the two previous trespasses.  (p. 510).

4. SAME.

    To avail himself of the right of acquisition of title to trespassing animals, given by section 3 of chapter 60 of the Code, the claimant must clearly show strict and full compliance with its provisions and maintenance of a lawful fence.  (p. 510).

5. SAME—*Set Off and Counter-claim—Conversion—Unliquidated Damages.*

    In an action for the value of animals taken and sold as having been forfeited to the owner of lawfully enclosed premises, by virtue of proceedings under section 3 of chapter 60 of the Code, the damages done to the property by the animals can neither be recouped nor set-off against their value.  (p. 511).

Error to Circuit Court, McDowell County.

Action by Laura E. Fink against the United States Coal & Coke Company.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Anderson, Strother & Hughes,* for plaintiff in error.

POFFENBARGER, PRESIDENT:

Claiming to have maintained a lawful fence around a certain lot of which it had possession as lessee, known as the Club House Lot, the defendant caught and put up 15 of the plaintiff's hogs on said lot, as having trespassed thereon the third time, after notice to the owner of two previous trespasses thereon, and afterwards sold them as its own, claiming title thereto by virtue of the provisions of section 3 of chapter 60 of the Code, saying the owner or occupier of lawfully enclosed grounds upon which the third trespass is committed, after notice in writing of two previous trespasses thereon, shall be entitled to such animal. On the writ of error to the judgment in favor of the plaintiff for $103.50, there are numerous assignments of error.

Proof of plaintiff's title to the hogs at the date of their seizure is full and complete, and the only possible ground of justification for their sale by the defendant is the statute already referred to. An effort was made to prove compliance with its requirements and acquisition of title by procedure under it. There was proof of numerous trespasses by the hogs and also of the service of such notice as the statute requires, before the date of the last trespass and seizure of the animals. But the evidence clearly fails to establish the maintenance of a lawful fence. The lot on which the hogs were found adjoins a railroad right of way and borders on a deep railway cut. On that side of the lot there is no fence. The other three sides are enclosed partly by picket fences and partly by a board fence, the former about four and a half feet high, running from the back line to the railroad cut, and the latter about five and a half feet high and enclosing the side opposite the railroad cut. The embankment to which the picket fences extend was from 15 to 25 feet deep, solid rock at the bottom and earth at the top. A witness says the slope from the top for a distance of about ten feet was on a grade or angle of about 45 degrees, and then the rock was perpendicular from that point to the bottom of the cut. At the point at which the fences came to the cut, the same witness says the embankment consisted of 12 feet of rock and from three to five feet of slope. There is no proof of connection of the fence with the perpendicular rock embankment. One witness says the fence extended down the edge of the embankment at both ends, and denies the

existence of opportunity for animals to pass around the ends of the fence, between the fence and the embankment. Another says the fence joined the embankment just a few inches from the top of the slope, and he thinks an animal could not pass between the ends of the fences and the cut and get into the lot. Neither of these witnesses nor any other says the fence extended down over the 45 degree slope to the top of the rock embankment. The former says an animal could not pass between the fences and the embankment, but the slope was a part of the embankment and the latter witness says the fence extended but a few inches down the slope of from three to five feet. Plaintiff's husband swears there was an opening at the end of the fence through which people traveled going to and from the club house, and this statement is nowhere denied. In response to a question as to this, one of the defendant's witnesses said: "They would have no occasion to do that, because the gate was not over six feet from the end of the cut." Replying to a pointed question as to whether men could go out at that opening if they wished to do so, he said: "If they wished to go around the embankment, the gate is not over ten or fifteen feet from the cut at the most." Another witness says he does not think there was such an opening, but admits he never examined the fence at that point. One of the witnesses for the defendant admits that the hogs entered the lot through the holes they rooted under the fence, and by working the gate open. The statute requires the fence to be so constructed that animals cannot creep through it, and it must be maintained in that condition. The rooting propensity of a hog is well known and it cannot be supposed the legislature intended to absolve the owner of the premises from duty to repair such holes as might be made in that way.

In its rulings upon prayers for instruction, the court properly treated the evidence as insufficient to warrant instructions respecting the maintenance of a lawful fence. Accordingly, at the instance of the plaintiff, one instruction was given, authorizing a verdict for the plaintiff, if the jury believed the defendant, through its authorized agent, took possession of the hogs and appropriated them to its own use by sale or otherwise, and refused all others asked for by the plaintiff. At the request of the defendant, it gave one instruction, denying right of re-

covery, unless the jury should believe the defendant by its duly
authorized agent unlawfully took possession of the plaintiff's
hogs and appropriated them by sale or otherwise to its own use,
and refused a number of others, one directing a verdict for the
defendant, one allowing a set-off for damages done by the hogs
against their value, one defining a lawful fence of posts, planks
and pickets to be one four feet high, so built that hogs could
not creep through or go under it without rooting; one author-
izing a verdict for the defendant if the jury should find it had
given five days notice of two previous trespasses by the hogs on
the grounds occupied by the defendant enclosed by a lawful
fence and a third trespass by the animals after such notice, and
another telling the jury as matter of law the defendant's
grounds were enclosed by a lawful fence at the time of the al-
leged trespass.

The interpretation of the evidence underlying these rulings
was correct. No connection between the fences and the
perpendicular rock wall is shown, if we assume such a wall or
cliff can be adopted as part of the fence, a question we do not
decide. Again there is no denial of the existence of a hole in
the fence at the embankment or a foot-way around the end of
the fence. On the defendant's side, the testimony on that point
is evasion or assumption, while on the plaintiff's it is positive
and direct. The extraordinary right of title by forfeiture must
be established, if at all, by clear and full proof.

The court properly sustained the objection to defendant's spe-
cial plea No. 1, denying right of recovery because the hogs in the
declaration mentioned were unlawfully trespassing on the
grounds and premises of the defendant; special plea No. 2, de-
nying right of recovery because the hogs were taken on grounds
of the defendant enclosed by a lawful fence; special plea No.
3, denying right of recovery because the hogs were unruly and
dangerous and were seized while unlawfully trespassing on
the defendant's premises; special plea No. 4, similar to special
plea No. 3; and special plea No. 6, alleging non-accrual of the
cause of action within one year next preceding the date of the
commencement of the suit. The common law inhibiting the
running at large of domestic animals is not in force in this
state. *Blaine* v. *Railway Co.,* 9 W. Va. 252; *Baylor* v. *Railroad
Co.,* 9 W. Va. 270. No statute gives a general right of seizure

and detention of such animals found trespassing upon the lands of another, whether enclosed or unenclosed. There is an optional stock law, the provisions of which are embodied in chapter 60 of the Code, giving such right of seizure, but it is not effective until put in actual operation by popular vote, and there is no suggestion in the record of the adoption of that statute in the magisterial district of McDowell county in which the seizure was made. Section 1 of chapter 131 of the Acts of 1882 absolutely prohibits the running at large of any stallion or jack, and conditionally of any bull over one year old, or buck sheep over four months old, or boar over two months old. As to bulls, buck sheep and boars, the statute is optional and must be adopted by a popular vote of a county to become effective. The decisions above referred to say the common law is in force as to unruly animals, but obviously it means animals that are dangerous to persons or other animals, not merely such as are likely to trespass upon real estate. Hence there is no warrant of law in this state for the propositions stated by special pleas Nos. 1, 2, 3 and 4. As the action is for the value of the hogs, the one year statute of limitations does not apply.

- The prayer for an instruction authorizing recoupment or set-off of the damages done by the hogs against their value was properly overruled. The injury to the property was a wrong separate and distinct from the appropriation of the hogs, and the claim therefor did not arise in any sense out of a contract. Recoupment is peculiarly and only a contractual right and is limited to damages for breach of the identical contract on which the plaintiff sues. *Dillon* v. *Eakle,* 43 W. Va. 502; *Logie* v. *Black,* 24 W. Va. 1; *Railroad Co.* v. *Jameson,* 13 W. Va. 833; 838. Debts only, not mere claims for unliquidated damages, can be set-off against the plaintiff's demand. *Coal & Coke Co.* v. *Hull Coal Co.,* 67 W. Va. 503. The claim as to which right of set-off was urged is one for mere unliquidated damages growing out of a tort.

The judgment is affirmed.

*Affirmed.*